

# Fourth Court of Appeals

## San Antonio, Texas

## OPINION

No. 04-13-00415-CR

Dave **MCNEIL**[1],
Appellant

v.

The **STATE** of Texas,
Appellee

From the 25th Judicial District Court, Guadalupe County, Texas
Trial Court No. 12-2002-CR
Honorable Charles Ramsay, Judge Presiding

Opinion by:     Marialyn Barnard, Justice

Sitting:        Marialyn Barnard, Justice
                Rebeca C. Martinez, Justice
                Patricia O. Alvarez, Justice

Delivered and Filed:  August 6, 2014

REVERSED AND REMANDED

After the trial court denied appellant Dave McNeil's motion to suppress, he pled guilty to

the offense of driving while intoxicated ("DWI").  On appeal, McNeil raises a single issue,

contending the trial court erred in denying his motion to suppress.  We reverse the trial court's

judgment and remand the matter for a new trial.

---

[1] In documents filed by counsel for appellant Dave McNeil at trial, and as well as in the appellant's brief filed in this court, counsel represents appellant's surname as "McNeal."  Additionally, the court reporter included a note in the Master Index which states: "The correct spelling of the Defendant's name is 'McNeal.'"  However, the trial court's judgment spells appellant's surname as "McNeil."  There is no indication that these are two different people.  We shall therefore use the spelling contained within the official judgment of the trial court, i.e., "McNeil."

**BACKGROUND**

McNeil was arrested for DWI. Prior to trial, he filed a motion to suppress the warrantless blood draw taken by police officers the night of his arrest. The trial court held a hearing on the motion to suppress.

At the hearing, Sergeant Bryan Nipper of the Cibolo Police Department was the State's sole witness. The sergeant testified that on May 10, 2012, at approximately 9:15 p.m., he saw a vehicle run a red light. Sergeant Nipper pulled the vehicle over. The sergeant stated that as he got out of his vehicle, he saw a second vehicle, which was traveling in the opposite direction, cross through the center median and head straight for him. The second vehicle, which was driven by McNeil, came to a stop next to Sergeant Nipper "facing the wrong way, basically, in the . . . traffic lane." Given the actions of the second car, Sergeant Nipper released the driver of the first vehicle, telling him to leave the scene. The sergeant then contacted dispatch and requested additional officers — he was concerned the intersection light would turn green and McNeil's vehicle would be struck head-on or McNeil would accelerate and strike a vehicle coming toward him.

Sergeant Nipper testified he spoke to McNeil, asking him several questions, but "wasn't getting any response." He asked McNeil to put the vehicle in park, asked him his name, etc., but "didn't get anything" from McNeil. The sergeant testified he eventually developed probable cause that led him to believe McNeil was intoxicated. Ultimately, McNeil was placed under arrest for suspicion of DWI.

Sergeant Nipper stated that while at the scene, he asked dispatch to "run" McNeil's criminal history. However, he was told the statewide computer system used to check criminal history was not working properly. Dispatch advised Sergeant Nipper it was unable to check for prior convictions. Sergeant Nipper testified the purpose of checking McNeil's criminal history was to determine if McNeil had prior DWI convictions, which might permit the sergeant to take a

blood draw from McNeil without a warrant. The sergeant stated that if he had learned McNeil had two prior DWI convictions, he would have taken him "straight to the hospital here in Seguin for a blood draw" as permitted by the Texas Transportation Code. However, when he was unable to obtain a criminal history, two other officers took McNeil to the Schertz Police Department — the location of the nearest intoxilyzer — for purposes of taking a breath sample.

Eventually, dispatch was able to obtain McNeil's criminal history, which showed he had two or more prior DWI convictions. Upon learning this, and prior to any breath sample being taken, officers took McNeil to the Cibolo Police Department, and he was ultimately taken to the hospital in Seguin for a warrantless blood draw. Sergeant Nipper estimated it was a little over an hour from the time McNeil stopped beside him to the time he was taken to the hospital for a blood draw. The sergeant testified McNeil refused to consent to giving a breath or blood sample.

At the conclusion of the evidence and after hearing arguments of counsel, the trial court denied McNeil's motion to suppress. Thereafter, McNeil pled guilty, but preserved his right to appeal the denial of his motion to suppress. He then perfected this appeal.

### ANALYSIS

In his sole appellate issue, McNeil contends that under the Supreme Court's decision in *Missouri v. McNeely*, 133 S.Ct. 1552 (2013), section 724.012 of the Texas Transportation Code is not a permissible exception to the Fourth Amendment's warrant requirement, and in the absence of proof of exigent circumstances or other recognized exception, the trial court erred in denying his motion to suppress. The State seems to concede that section 724.012 cannot, pursuant to *McNeely*, create a per se exception to the warrant requirement of the Fourth Amendment. However, the State contends that in this case, exigent circumstances — other than the evanescent nature of blood evidence — are present, and therefore, even under *McNeely*, suppression was not required.

### *Standard of Review*

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007). Trial judges are uniquely situated to observe the demeanor and appearance of any witnesses and, as the sole fact finder at a suppression hearing, may believe or disbelieve any portion of a witness's testimony and make reasonable inferences from the evidence presented. *Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009); *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007). Accordingly, we afford a great deal of deference to the trial court's determination of historical facts. *Amador*, 221 S.W.3d at 673. However, whether a specific search or seizure is reasonable or supported by probable cause is a question of law subject to de novo review. *Dixon v. State*, 206 S.W.3d 613, 616 (Tex. Crim. App. 2006).

### *Section 724.012(b) of the Texas Transportation Code and Weems*

Recently, in *Weems v. State*, this court conducted an in-depth analysis of the *McNeely* decision and its impact on sections 724.011(a) and 724.012(b) of the Texas Transportation Code. *See* No. 04-13-00366-CR, 2014 WL 2532299 (Tex. App.—San Antonio May 14, 2014, pet. filed). Section 724.011(a), known as the implied consent statute, provides that a person impliedly consents to a breath test or blood draw if the person is arrested for an offense arising out of acts alleged to have been committed while the person was driving under the influence. TEX. TRANSP. CODE ANN. § 724.011(a) (West 2011). Section 724.012(b)(3)(B), which is at issue in this appeal and is often referred to as the mandatory blood draw statute, provides that an officer can require a person to submit to a breath test or blood draw when a person has been arrested for driving under the influence and has been previously convicted for DWI on two or more occasions. *Id.* § 724.012(b)(3)(B). In *Weems*, we held *McNeely* "clearly proscribed what it labeled *categorical* or *per se* rules for warrantless blood testing, emphasizing over and over again that the

reasonableness of a search must be judged based on the totality of the circumstances presented in each case." *Weems*, 2014 WL 2532299, at \*8 (citing *McNeely*, 133 S.Ct. at 1560–63). We specifically held these statutes "clearly create such categories or per se rules," which the Supreme Court rejected in *McNeely*. *Id.* As we noted, these statutes do not allow for consideration of the totality of the circumstances present in each case. *Id.* Rather, these statutes consider only certain facts, while *McNeely* mandates a consideration of the totality of the circumstances. *Id.* Accordingly, we held the implied consent and mandatory blood draw statutes, although not unconstitutional per se[2], are not valid exceptions to the Fourth Amendment's warrant requirement given the Court's decision in *McNeely*. *Id.*

Based on our prior decision in *Weems*, we hold that in this case although the statute permitting a blood draw when the DWI suspect has two or more prior DWI convictions is not unconstitutional per se, it does not permit a blood draw in the absence of a warrant or some well-recognized exception to the Fourth Amendment's warrant requirement. *See id.*

The State also relies upon section 724.011(a) of the Transportation Code, the implied consent statute, to contend the trial court did not err in granting the motion to suppress. In *Weems*, we addressed the impact of the *McNeely* decision on section 724.011(a) concomitantly with the impact on section 724.012(b)(3)(B). *See id.* Accordingly, for the same reasons we hold the mandatory blood draw statute is not a permissible exception to the warrant requirement, we likewise hold the implied consent statute in section 724.11(a) is not a permissible exception to the warrant requirement. *See id.*

---

[2] This court did not hold, and does not now hold, that sections 724.011(a) and 724.012(b) are unconstitutional. Rather, we merely hold that under *McNeely*, these provisions do not create a per se exception to the Fourth Amendment's warrant requirement. The statutes, however, may be used for other purposes.

Moreover, we hold the State's argument that other exceptions to the Fourth Amendment's warrant requirement — automobile exception, special needs exception, search incident to arrest exception — might constitutionally validate a blood draw under either the implied consent statute or the mandatory blood draw statute is irrelevant. As noted, we are not holding the implied consent and mandatory blood draw statutes unconstitutional; rather, we merely hold they are not permissible exceptions to the warrant requirement.

### *Exigent Circumstances*

As noted above, the State contends that even if a blood draw was impermissible under section 724.012(b)(3)(B), the exigency exception justified the warrantless blood draw. We disagree. Sergeant Nipper was the only witness at the suppression hearing, and it is clear from his testimony he relied on the mandatory blood draw statute to seize McNeil's blood. *See id.*

The Court of Criminal Appeals has held "[t]here is a strong preference for searches to be administered pursuant to a warrant." *Gutierrez v. State*, 221 S.W.3d 680, 685 (Tex. Crim. App. 2007); *see Illinois v. McArthur*, 531 U.S. 326, 338 (2001) (Souter, J., concurring) ("[A] search with a warrant has a stronger claim to justification on later, judicial review than a search without one."). This does not mean, however, that all warrantless searches are invalid. *Gutierrez*, 221 S.W.3d at 685. Once the defendant establishes the absence of a warrant, the burden shifts to the State to prove the warrantless search in question was reasonable under the totality of the circumstances. *Amador*, 221 S.W.3d at 672–73. This burden may be satisfied by proving the existence of an exception to the warrant requirement. *See Gutierrez*, 221 S.W.3d at 685.

One of the established exceptions to the warrant requirement, and the one at issue here, "applies when the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment." *McNeely*, 133 S.Ct. at 1558 (quoting *Kentucky v. King*, 131 S.Ct. 1849, 1856 (2011)). According to the Supreme

Court, there are numerous circumstances that may permit a warrantless search based on exigency, including the imminent destruction of evidence. *McNeely*, 133 S.Ct. at 1559. However, to determine whether the warrantless search was permissible based on exigency, we must look to the totality of the circumstances. *Id.* It is for this reason that section 724.012(b)(3)(B) is not a permissible exception to the warrant requirement — it does not allow for consideration of the totality of the circumstances, but permits a blood draw based merely upon the existence of two or more prior DWI convictions regardless of the circumstances. *See Weems*, 2014 WL 2532299, at *8; *cf. McNeely*, 133 S.Ct. at 1563. We must review the evidence presented at the suppression hearing in this case to determine whether, under the totality of the circumstances, the State proved the existence of exigent circumstances so as to permit a warrantless blood draw. *See Weems*, 2014 WL 2532299, at *8.

Here, as noted above, the only evidence produced by the State at the suppression hearing was provided by Sergeant Nipper. With regard to exigency, the sergeant testified that to secure a warrant, officers with the Cibolo Police Department "contact the on-call criminal investigators," who would "call around and try to find a magistrate." He stated that in general, warrants are sought during normal business hours, which he "guessed" would be from 8:00 a.m. to 5:00 p.m., Monday through Friday — McNeil was arrested on a Thursday, shortly after 9:15 p.m. When asked about what he would do if he needed to obtain a warrant after normal business hours, Sergeant Nipper testified that "if it's an absolute emergency," he could call the on-call criminal investigator at home, and that investigator would "come in and start trying to find a judge." He was unaware of any "on-call" magistrates that might be contacted, and he did not personally have any contact information for a magistrate for purposes of obtaining a warrant; that information would be in the possession of an on-call investigator.

When asked how much time it might take to obtain a warrant outside of normal business hours, the sergeant could only opine that it would "probably" take twenty or thirty minutes for the on-call investigator to reach the Department. He did not say how long it might take for the investigator to reach a magistrate and secure the warrant.

Sergeant Nipper admitted that if he discovered a DWI arrestee had two or more prior convictions for DWI, he would "immediately take that person to the hospital for a blood draw" based on the mandatory blood draw statute. Because he could not immediately determine if McNeil had two or more prior DWI convictions, an officer took McNeil to the Schertz Police Department, which was the nearest location with an intoxilyzer. However, before McNeil could provide a breath sample, Sergeant Nipper learned McNeil had two or more prior DWI convictions. Accordingly, he contacted the officer who transported McNeil to Schertz and told him to take McNeil to the Cibolo Police Department. Thereafter, another officer took McNeil to a hospital in Sequin for a blood draw. According to the sergeant, from the time he first encountered McNeil to the time of the blood draw was approximately one hour and twenty minutes.

On cross-examination, Sergeant Nipper testified there were at least three officers at the scene of McNeil's arrest. He admitted none of the three officers attempted to contact a magistrate in order to obtain a warrant. The officers did not discuss getting a search warrant for a blood draw. The sergeant testified that although he did not know how many magistrates in Guadalupe County could have signed a warrant, he believed there were four justices of the peace in the county. He also admitted there were three district judges in the county. Sergeant Nipper denied having an emergency number for any of the magistrates or judges, and did not know if the other officers at the scene had such numbers.

Sergeant Nipper admitted that if he believed he needed a search warrant, he could call the on-call investigator, but he did not do so in this case. He reiterated there were numerous officers

at the scene, perhaps as many as five at one point. When asked, given the circumstances, what emergency existed to prevent him or another officer from attempting to obtain a search warrant, Sergeant Nipper stated, "We've never gotten search warrants for blood draws." He agreed there was no emergency that night that would have prevented an attempt to obtain a warrant:

> Q. Then what was the emergency going on that would have prevented you or any other officer from your department trying to get a search warrant?
>
> A. We've never gotten search warrants for blood draws.
>
> Q. Right. You agree with me there was no such emergency going on that night?
>
> A. Yes, sir.

At the conclusion of the hearing, the trial court stated on the record that because Guadalupe County did not have a system in place to allow officers to contact magistrates after normal business hours, the Supreme Court's decision in *McNeely* did not mandate that McNeil's motion to suppress be granted. We disagree.

In *McNeely*, the Supreme Court held "the procedures in place for obtaining a warrant or the availability of a magistrate judge, may affect whether the police can obtain a warrant in an expeditious way and therefore may establish an exigency that permits a warrantless search." 133 S.Ct. at 1568. However, in this case, although there was evidence that magistrates were not "on-call," there were procedures in place for obtaining a warrant if necessary. The officer could call the on-call investigator who would contact a magistrate to sign the warrant. According to Sergeant Nipper, it would only take twenty or thirty minutes for the investigator to reach the office and begin contacting magistrates and other judges, of which there were several to choose from. It took well over an hour for the officers to present McNeil for a blood draw, and there is no evidence a magistrate could not have been located and signed a warrant in that same amount of time. Importantly, the undisputed evidence establishes Sergeant Nipper never even considered trying to

obtain a warrant — though he knew he could if he needed to. The sergeant admitted officers never obtained warrants for blood draws and it is clear from the evidence that Sergeant Nipper was relying exclusively on the mandatory blood draw statute, and from the outset attempted to obtain information about McNeil's prior criminal history for this specific purpose.

We hold the mere fact that a magistrate or judge is not "on-call" for purposes of obtaining a warrant does not alone establish exigency. *See id.* at 1558. The evidence in this case shows the officer never thought of obtaining a warrant and none of the officers at the scene took a single step in an attempt to obtain a warrant. Accordingly, we hold this record does not show that under the totality of the circumstances, the warrantless blood draw was justified by the exigency exception to the Fourth Amendment's warrant requirement. *See id.* at 1558–59.

### *Good Faith Exception*

The State contends also contends that even if the blood draw was impermissible based on *McNeely* and the absence of exigent circumstances, the blood evidence was properly admitted under the good faith exception to the exclusionary rule. The State notes Sergeant Nipper relied upon section 724.012(b)(3)(B) of the Transportation Code, which permits an officer to require a DWI arrestee to provide a blood sample if the arrestee has two or more prior DWI convictions. *See* TEX. TRANSP. CODE ANN. § 724.012(b)(3)(B).

When the State obtains evidence in violation of the Fourth Amendment, as it did here, the federal exclusionary rule usually precludes the use of that evidence in a criminal proceeding against the party whose rights were violated. *Illinois v. Krull*, 480 U.S. 340, 347 (1987) (citing *Weeks v. United States*, 232 U.S. 383 (1914); *Mapp v. Ohio*, 367 U.S. 643 (1961)). The main purpose of the rule is to discourage prospective police misconduct, thereby securing the Fourth Amendment's guarantee against unreasonable searches and seizures. *Krull*, 480 U.S. at 347 (citing *United States v. Calandra*, 414 U.S. 338, 347 (1974)).

Under the federal exclusionary rule, if law enforcement personnel rely in good faith on a statute authorizing a warrantless search, and the statute in question is later found to be unconstitutional, the evidence seized need not be excluded. *Krull*, 480 U.S. at 349–50. Accordingly, the question is whether Sergeant Nipper could, in good faith, rely upon section 724.012(b)(3)(B), the mandatory blood draw statute, when he decided not to obtain a warrant before subjecting McNeil to a blood draw.

The mandatory blood draw statute does not explicitly provide for a warrantless search. *Weems*, 2014 WL 2532299, at *9 (citing *Villarreal v. State*, __ S.W.3d __, No. 13-13-00253-CR, 2014 WL 1257150, at *11 (Tex. App.—Corpus Christi Jan. 23, 2014, pet. granted)). Although the statute states an officer shall take a blood draw if the DWI suspect has two or more prior DWI convictions, it does not *mandate* that he do so without a warrant. *See* TEX. TRANSP. CODE ANN. § 724.012(b)(3)(B). In fact, the mandatory blood draw statute — the statute upon which Sergeant Nipper relied — does not address or purport to dispense with the Fourth Amendment's warrant requirement for blood draws. *See Villarreal*, 2014 WL 1257150, at *11. Accordingly, it cannot be said that Sergeant Nipper acted in good faith when he failed to obtain a warrant based upon a statute that does not dispense with the warrant requirement. Accordingly, we hold the exclusionary rule does not apply in this case.

### *Harm Analysis*

The warrantless blood draw violated McNeil's rights under the Fourth Amendment. We do not believe a traditional harm analysis is mandated in these circumstances — a plea of guilty following the denial of a motion to suppress. *See Badgett v. State*, 79 S.W.3d 581, 586 n.1 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd). However, if under Rule 44.2(a) of the Texas Rules of Appellate Procedure we must conduct such an analysis, we hold the erroneous denial of the motion to suppress "contributed in some measure to the State's leverage in the plea bargaining

process," and therefore, we cannot say beyond a reasonable doubt that the error in denying the motion to suppress did not contribute to McNeil's decision to plead guilty, which resulted in his conviction. *McKenna v. State*, 780 S.W.2d 797, 800 (Tex. Crim. App. 1989); *see* TEX. R. APP. P. 44.2(a).

## CONCLUSION

Because we hold the warrantless blood draw violated McNeil's Fourth Amendment rights, we reverse the trial court's judgment and remand this matter for a new trial in accordance with this court's opinion.

Marialyn Barnard, Justice

Publish