

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-13-00826-CR

Taylor M. **MOSER**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 216th Judicial District Court, Gillespie County, Texas
Trial Court No. 4960
Honorable N. Keith Williams, Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:       Sandee Bryan Marion, Chief Justice
               Karen Angelini, Justice
               Marialyn Barnard, Justice

Delivered and Filed:  April 29, 2015

REVERSED AND REMANDED

Taylor M. Moser appeals the trial court's denial of his motions to suppress evidence. We conclude the trial court did not err in denying Moser's motion to suppress his arrest. However, because Moser's rights under the Fourth Amendment were violated by the taking of a warrantless, nonconsensual blood draw, the trial court erred in denying his motions to suppress the results of the blood tests. We therefore reverse the trial court's judgment and remand the cause for a new trial.

## BACKGROUND

Moser filed three separate motions to suppress in the trial court. The first motion sought suppression of his arrest. The second motion sought suppression of the results of a blood test taken at the direction of the Texas Department of Public Safety. The third motion sought suppression of results of any blood tests performed by the hospital. The trial court heard all three motions at an evidentiary hearing. The State stipulated that Moser was arrested without a warrant and his blood was taken without a warrant.

At the hearing, Trooper Mike Bacon, an officer with the Department of Public Safety in Fredericksburg, Texas, testified that on September 14, 2009, he was the on-call trooper for Gillespie County. At about 4:00 a.m., he was at home when he received a call from Fredericksburg dispatch regarding a one-car rollover accident on Highway 16. He then met with Sergeant Walter Todd at the Gillespie County Sheriff's Office. According to Trooper Bacon, Sergeant Todd was searching for one of the occupants of the vehicle who had left the scene of the accident. Sergeant Todd told Trooper Bacon the location of the accident. When Trooper Bacon arrived at the scene, he was informed by Deputy Moellering and Deputy Robinson that the person who had identified himself as the driver of the vehicle had been transported to the hospital; that another occupant of the vehicle had left the scene; that Sergeant Todd was searching for him; and that they had secured the scene. According to Trooper Bacon, the person who identified himself as the driver was Appellant Moser.

Trooper Bacon testified that he investigated the crash scene. He saw an open twelve-ounce can of beer wedged between the driver's seat and the driver's floorboard area. The justice of peace on site, Justice Rech, told Trooper Bacon that there had been a fatality as a result of the accident. Trooper Bacon testified that he determined the vehicle had been traveling northbound on State Highway 16. The car had crossed the bridge going over the Pedernales River. It then drifted across

the double yellow line into the southbound lane, at which time it made a hard right, side-skidded into the northbound ditch, and then began to overturn several times.

Trooper Bacon then heard over the radio that Sergeant Todd had located the other occupant and was returning him to the scene of the accident. When they arrived, Trooper Bacon talked to the other occupant, Jesse Johnson. Johnson said that Moser had picked him up earlier in the day, along with a female friend, and they had driven to another friend's house in Fredericksburg where they consumed a bottle of vodka between the four of them. Johnson told Trooper Bacon that the deceased, Jesus Martinez, then called Moser and told Moser he could get more alcohol. Johnson and Moser left and drove to Kerrville where they picked up Martinez. Johnson said that they then drove to another residence in Kerrville where they obtained some beer. They were all returning to the first residence in Fredericksburg when the crash occurred. Johnson, Moser, and Martinez were all under the age of 21.

Johnson said Moser was the driver of the vehicle. Johnson told Trooper Bacon that when Moser drifted across the double yellow line, Johnson reached over and helped him pull the wheel back to correct the car back into the northbound lane. Johnson said Moser overcorrected and the accident occurred. Trooper Bacon then asked Johnson to remove his shirt so that he could verify through the seatbelt marking of Johnson's skin where Johnson had been seated. Trooper Bacon testified that Johnson had an abrasion from his right shoulder across to his left hip, which indicated Johnson was sitting in the passenger seat. Trooper Bacon testified that he was then informed Moser was about to be released from the hospital, so he stopped his interview with Johnson and went to the hospital.

When Trooper Bacon arrived at the hospital, Moser was in the ER treatment room with a leg injury. Moser's parents and grandparents were present. Trooper Bacon identified himself to Moser, and Moser invoked his right to counsel. Trooper Bacon testified that he did not perform

any field sobriety tests on Moser because Moser was obviously injured and had received some kind of pain medication. Trooper Bacon testified that he detected the odor of alcohol, but said that hospital rooms typically have an alcohol smell. Trooper Bacon's best estimate was that the accident occurred at 2:35 a.m. He requested a blood specimen from Moser at 5:47 a.m. Moser refused to provide one. Trooper Bacon testified that he then obtained an involuntary blood specimen, relying on the Texas Transportation Code for authority.

On cross-examination, Trooper Bacon testified that Officer Moellering had said he had not smelled alcohol on Moser because he was not close enough to Moser to be able to detect any smell. Trooper Bacon testified that Officer Robinson said he had smelled alcohol on Moser's person. According to Trooper Bacon, the beer can found in the car still had alcohol in it and was cool to the touch. Trooper Bacon testified that the car had overturned at least two times and that a person could have alcohol on his person as a result of the car rolling over. Trooper Bacon also admitted that while Johnson had said the four individuals had consumed a full bottle of vodka, Trooper Bacon did not know how much each person drank. Trooper Bacon also said that Johnson had told him he, Moser, and Martinez had been stopped by a Kerrville police officer before the accident, had been giving a warning, and were then allowed to leave. Trooper Bacon also testified that although he arrested Moser at the hospital, he left Moser at the hospital because he had broken his leg. Thus, Trooper Bacon did not physically take Moser into custody. Trooper Bacon also testified that he had not seen the dash cam footage at the time he made the arrest. He did not perform a horizontal gaze nystagmus test because Moser said he had bumped his head during the accident. According to Trooper Bacon, a person with a head injury is not a good candidate for the HGN test. Further, Trooper Bacon said the hospital had given Moser pain medication.

Thus, at the evidentiary hearing, the State elicited testimony that Trooper Bacon ordered the warrantless blood draw pursuant to section 724.012(b)(1)(A) of the Texas Transportation

Code. Section 724.012(b)(1)(A) requires the taking of a nonconsensual blood specimen of a person if the person is arrested for driving while intoxicated, was the operator of a motor vehicle involved in an accident that the officer reasonably believes occurred as a result of the offense and, at the time of the arrest, the officer reasonably believes that as a direct result of the accident an individual has died. *See* TEX. TRANSP. CODE ANN. § 724.012(b)(1)(A). After hearing all the evidence, the trial court denied the motions to suppress. The record does not reflect that Moser requested the trial court to make findings of fact and conclusions of law, and no such findings are included in the appellate record. *See State v. Elias*, 339 S.W.3d 667, 676-77 (Tex. Crim. App. 2011) (requiring trial court to make essential findings when requested). Moser appeals.

## STANDARD OF REVIEW

The trial court is the sole trier of fact at a suppression hearing and thus evaluates witness testimony and credibility. *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005). When we review a trial court's ruling on a motion to suppress, we give great deference to the trial court's determination of historical facts while reviewing the trial court's application of the law *de novo*. *Id.* When, as here, the trial court does not make findings of fact, we view the evidence in the light most favorable to the trial court's ruling and assume the trial court made implicit findings of fact that support its ruling, as long as such implicit findings are supported by the record. *Id.*

The initial burden of proof on a motion to suppress rests with the defendant, who meets this burden by showing that the search or seizure occurred without a warrant. *Id.* Then, the burden shifts to the State to prove the reasonableness of the warrantless search or arrest. *Id.*

## DISCUSSION

A. *Motions to Suppress Blood Test Results*

In his first issue, Moser argues the trial court erred in denying his motions to suppress the results of the warrantless, nonconsensual blood tests because the admission of such results violates

his rights under the Fourth Amendment to the Constitution. For support, Moser relies on the Supreme Court's decision in *Missouri v. McNeely*, 133 S. Ct. 1552 (2013), and this court's decision in *Weems v. State*, 434 S.W.3d 655 (Tex. App.—San Antonio 2014, pet. granted). In *Weems*, 434 S.W.3d at 665, we analyzed *McNeely* and concluded that section 724.12(b)(3)(B) does not constitute a valid exception to the Fourth Amendment's warrant requirement. *See also McNeil v. State*, 443 S.W.3d 295, 299-300 (Tex. App.—San Antonio 2014, pet. filed). Similarly, the Texas Court of Criminal Appeals recently held in *State v. Villarreal*, No. PD-0306-14, 2014 WL 6734178, at *20 (Tex. Crim. App. Nov. 26, 2014), that "the provisions in the Transportation Code do not, taken by themselves, form a constitutionally valid alternative to the Fourth Amendment warrant requirement." The court of criminal appeals explained that "the Supreme Court's holding in *McNeely* makes clear that drawing the blood of an individual suspected of DWI falls under the category of cases holding that 'a warrantless search of a person is reasonable only if it falls within a *recognized* exception' to the warrant requirement." *Villarreal*, 2014 WL 6734178, at *20 (quoting *McNeely*, 133 S. Ct. at 1558) (emphasis added). The court of criminal appeals emphasized that the *McNeely* Court "explained that such an intrusion implicates an individual's 'most personal and deep-rooted expectations of privacy.'" *Villarreal*, 2014 WL 6734178, at *20 (quoting *McNeely*, 133 S. Ct. at 1558). According to the court of criminal appeals, "[t]hese principles from *McNeely*—the recognition of the substantial privacy interests at stake and the applicability of the traditional Fourth Amendment framework that requires either a warrant or an applicable exception—apply with equal force to this case." *Villarreal*, 2014 WL 6734178, at *20. Thus, the court of criminal appeals "reject[ed] the State's assertion that a warrantless, nonconsensual blood draw conducted pursuant to those provisions [of the Transportation Code] can fall under one of the established exceptions to the warrant requirement." *Id.* The court of criminal appeals further

"reject[ed] the State's suggestion that such a search may be upheld under a general Fourth Amendment balancing test." *Id.*

The State has not argued that any other recognized exception to the Fourth Amendment's warrant requirement applies in this case. Instead, it argues that the Texas exclusionary rule and federal exclusionary rule should not apply because the officer relied on section 724.012 in good faith. We, however, have already rejected this argument. *See McNeil*, 443 S.W.3d at 303; *Weems*, 434 S.W.3d at 666-67; *Fitzgerald v. State*, No. 04-13-00662-CR, 2014 WL 3747270, at * 2 (Tex. App.—San Antonio July 30, 2014, pet. filed).

Because the State did not show that the warrantless blood draw was reasonable under the Fourth Amendment, Moser's motions to suppress the blood test results should have been granted. After the trial court denied Moser's motions to suppress, he decided to plead guilty. We cannot determine beyond a reasonable doubt that the trial court's failure to grant his motions to suppress the blood test results did not contribute in some measure to the State's leverage in obtaining his guilty plea and thus to his conviction. *See* TEX. R. APP. P. 44.2(a); *Kennedy v. State*, 338 S.W.3d 84, 102-03 (Tex. App.—Austin 2011, no pet.). Therefore, we hold the trial court erred in denying Moser's motions to suppress the results of the blood tests.[1]

### B. Motion to Suppress Arrest

In his second issue, Moser argues that the trial court erred in denying his motion to suppress his arrest because the arresting officer lacked probable cause to arrest Moser for intoxication manslaughter. "Generally, a warrantless arrest is, pursuant to the Fourth Amendment, unreasonable *per se* unless the arrest fits into one of a 'few specifically defined and well delineated

---

[1] In a third issue, Moser also argues that the blood test results should have been suppressed because the arresting officer had no reasonable belief as required by section 724.012(b) that the accident resulting in death was caused by intoxication. Having determined that the trial court should have suppressed the blood test results, we need not reach this issue.

exceptions.'" *Torres v. State*, 182 S.W.3d 899, 901 (Tex. Crim. App. 2005) (quoting *Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993)). "A peace officer may arrest an individual without a warrant only if probable cause exists with respect to the individual in question and the arrest falls within one of the exceptions set out in TEX. CODE CRIM. PROC. art. 14.01-14.04." *Torres*, 182 S.W.3d at 901. Article 14.03 of the Texas Code of Criminal Procedure provides that a peace officer may arrest without a warrant "persons found in suspicious places and under circumstances which reasonably show that such persons have been guilty of some felony, violation of Title 9, Chapter 42, Penal Code, breach of the peace, or offense under Section 49.02, Penal Code . . . ."[2] TEX. CODE CRIM. PROC. ANN. art. 14.03 (West Supp. 2014).

"Probable cause for a warrantless arrest requires that an officer have a reasonable belief that, based on facts and circumstances within the arresting officer's personal knowledge, *or of which the officer has reasonably trustworthy information*, an offense has been committed." *Torres*, 182 S.W.3d at 902 (emphasis added) (citations omitted). Thus, the arresting officer need not *personally* observe all the facts relating to probable cause but may rely on reasonably trustworthy information. *See id.*

"The test for probable cause is an objective one, unrelated to the subjective beliefs of the arresting officer, and it requires a consideration of the totality of circumstances facing the arresting officer." *Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009) (citations omitted). "A finding of probable cause requires 'more than bare suspicion' but 'less than . . . would justify . . . conviction.'" *Id.* (quoting *Brinegar v. United States*, 338 U.S. 160, 175 (1949)) (alteration in original). "[P]robable cause must be based on facts, not opinions." *Torres*, 182 S.W.3d at 902.

---

[2] Moser argues only that the officer did not have probable cause for the warrantless arrest.

In support of his argument that Trooper Bacon had no probable cause to arrest him in this case, Moser relies on *Torres v. State*, 182 S.W.3d at 902-03, a case in which the court of criminal appeals held no probable cause existed to arrest the appellant for driving while intoxicated because the arresting officer relied on other officers' *opinions* that appellant was intoxicated and not on specific, articulable *facts*. Here, however, Trooper Bacon did not rely on opinions from the other officers, but instead relied on specific facts and circumstances he learned from reasonably trustworthy sources. When he arrived at the scene of the one-car accident, Trooper Bacon was informed by other law enforcement officers that Moser identified himself as the driver of the vehicle and had been transported to the hospital. Trooper Bacon was also informed by an officer that the officer had smelled alcohol on Moser. When Trooper Bacon inspected the vehicle involved in the accident, he saw an open, cool, and partially full can of beer "wedged between the driver's seat and the driver's floorboard area." Trooper Bacon then spoke with a justice of the peace, who confirmed that one of the passengers had died as a result of the accident. In examining the scene, Trooper Bacon determined that the vehicle involved in the accident had drifted into the on-coming lane of traffic, crossed the centerline, turned hard back into its own lane of travel, went off the roadway, and then rolled over. Trooper Bacon then interviewed a passenger of the vehicle, Johnson, who said that he, Moser, and two others had consumed a bottle of vodka earlier. Johnson told him that "[a]t some point during the consumption of the bottle of vodka," the deceased called Moser and said that he could obtain more alcohol. Moser and Johnson drove from Fredericksburg to Kerrville to pick up the deceased, obtained beer, and were returning to Fredericksburg when the accident occurred. Johnson said that Moser was driving the vehicle and had "drifted over into the oncoming lane of traffic." "Johnson reached over and grabbed the steering wheel to kind of pull them back into the right lane of traffic." Moser overcorrected and the vehicle rolled. Trooper Bacon then asked Johnson to lift his shirt to confirm that Johnson was indeed the passenger of the vehicle.

Trooper Bacon testified Johnson had an abrasion mark from the seatbelt confirming he had been the passenger. Under these facts and the totality of circumstances known to Trooper Bacon, he had probable cause to arrest Moser for intoxication manslaughter.

Moser emphasizes that Trooper Bacon did not conduct any field sobriety tests and did not testify that Moser had slurred speech or blood shot eyes. Moser further emphasizes that he had been stopped by another officer for speeding before the accident and had only been given a warning ticket and that the open can of beer in the car during the roll-over accident "could account for the odor on [his] person." While Moser emphasizes these facts in favor of a finding that he was not intoxicated, a finding of probable cause can be supported by "less than . . . would justify . . [a] conviction" and need only be "more than bare suspicion." *Brinegar v. United States*, 338 U.S. 160, 175 (1949). Further, under our standard of review, we must defer to factual findings implicitly made by the trial court. *See Torres*, 182 S.W.3d at 902. We therefore hold that Trooper Bacon had probable cause to arrest Moser.

## CONCLUSION

Because Trooper Bacon had probable cause to arrest Moser, the trial court did not err in denying Moser's motion to suppress his arrest. However, because Moser's rights under the Fourth Amendment were violated by the warrantless, nonconsensual blood draw, the trial court erred in denying Moser's motions to suppress the blood test results. And, Moser was harmed as a result of the trial court's error. We therefore reverse the trial court's judgment and remand this cause for a new trial.

Karen Angelini, Justice

Do not publish