

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

Nos. 04-14-00389-CR & 04-14-00390-CR

Paul Anthony **GARCIA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 216th Judicial District Court, Kendall County, Texas
Trial Court Nos. 5397 & 5398
Honorable N. Keith Williams, Judge Presiding

Opinion by:     Marialyn Barnard, Justice

Sitting:          Marialyn Barnard, Justice
                 Patricia O. Alvarez, Justice
                 Jason Pulliam, Justice

Delivered and Filed:  July 29, 2015

REVERSED AND REMANDED

A jury convicted appellant Paul Anthony Garcia of reckless bodily injury to a child and

intoxication manslaughter.  As to both offenses, the jury made affirmative findings that Garcia

used a deadly weapon — a vehicle.  Based on the jury's recommendations as to punishment, the

trial court imposed a sentence of ten years' confinement, probated, for the reckless bodily injury

to a child offense, and a sentence of fifteen years' confinement for the intoxication manslaughter

offense.  On appeal, Garcia contends the trial court erred in: (1) denying his motion to suppress;

(2) admitting certain medical records into evidence; and (3) denying his motion for mistrial based

on the State's alleged improper jury argument. We agree the trial court erred in denying Garcia's motion to suppress, and we reverse and remand for a new trial.

## BACKGROUND

The record shows that a head-on collision occurred in Kendall County. Shortly thereafter, Boerne police officer Lance DeLeon arrived at the scene of the accident. Two cars were involved in the accident, a brown pickup truck and white four-door car. Officer DeLeon testified a Hispanic male, later identified as Garcia, was in the driver's seat of the pickup truck. According to the officer, Garcia was conscious, but confused and incoherent. After asking a bystander to keep an eye on Garcia, Officer DeLeon went to check on a child, subsequently identified as G.B., lying in a ditch near the white car. According to one of the first bystanders on the scene, Ricardo Carrillo, he and his friends had removed G.B. from the vehicle. The officer then approached the white car, which was on its side. When Officer DeLeon looked into the car, he saw the driver, D.B., strapped into the driver's seat. The officer testified she was deceased.

Thereafter, other emergency personnel arrived at the scene, including Texas Department of Public Safety Trooper Eric Kendrick. G.B. was airlifted to the hospital. Garcia, who was pinned in his truck, was removed and also airlifted to the hospital. Trooper Kendrick stated he spoke to Garcia before he was taken to the hospital and Garcia appeared disoriented, lacking "normal use of his mental faculties." Trooper Kendrick testified that initially, he did not suspect Garcia was intoxicated. The trooper stated he was questioning Garcia as part of the "crash investigation." Trooper Kendrick testified that during the course of the investigation, he discovered evidence that led him to believe Garcia was intoxicated at the time of the accident, including: (1) 911 calls advising of a wrong way driver in the area; (2) the open container of liquor found in Garcia's vehicle; (3) the marijuana pipe found in Garcia's vehicle; (4) Garcia's red, bloodshot eyes; (5)

Garcia's apparent loss of his normal faculties; and (6) Garcia's inability to answer questions at the scene.

As a result of his investigation, Trooper Kendrick, who was still at the scene, contacted DPS San Antonio Communications and asked that a trooper be sent to the hospital to perform a mandatory blood draw on Garcia pursuant to section 724.012 of the Texas Transportation Code.[1] The blood draw was taken under the supervision of Trooper Rodney P. Zarate. Admittedly, neither Trooper Kendrick, Trooper Zarate, nor any other law enforcement officer obtained a warrant prior to mandating the blood draw. Trooper Kendrick admitted there was nothing that would have prevented him from obtaining a search warrant. Rather, at the time, a warrantless blood draw was part of DPS protocol.

The result of the blood draw showed Garcia's blood alcohol level to be 0.187 grams per hundred milliliters of whole blood. The legal limit in Texas is 0.08 grams per hundred milliliters of whole blood, so Garcia's sample was more than twice the legal limit. Garcia was ultimately arrested and charged with reckless bodily injury to a child and intoxication manslaughter.

Garcia filed a pretrial motion to suppress the results of the blood draw. At the suppression hearing, Garcia argued, among other things, that the warrantless blood draw was improper under the Supreme Court's recent decision in *Missouri v. McNeely*, __ U.S. __, 133 S.Ct. 1552, 1560–63 (2013) in which the Court held a categorical or per se rule permitting warrantless blood draws violates the Fourth Amendment. The trial court denied Garcia's motion to suppress and the case

---

[1] Based on the underlying facts, it appears Trooper Kendrick was relying upon section 724.012(b)(1)(A)-(C). *See* TEX. TRANSP. CODE ANN. § 724.012(b)(1)(A)-(C) (West 2011). This provision provides that a peace officer shall require a blood or breath specimen if a driver is arrested for driving while intoxicated after having been involved in an accident and as a result of the accident, another individual has died or will die, has suffered serious bodily injury, or has suffered bodily injury and been transported to a hospital or other medical facility for treatment. *Id.* It is undisputed that D.B. died as a result of the accident and G.B. suffered injury and was transported to a hospital for treatment.

proceeded to trial. At trial, the results of the blood draw were admitted into evidence. Garcia was ultimately convicted and thereafter perfected this appeal.

## ANALYSIS

As set forth above, Garcia raises several issues challenging his conviction. However, because we find Garcia's first issue — the one challenging the trial court's denial of his motion to suppress — dispositive, we need not address any of the remaining issues. Accordingly, we proceed with our analysis of Garcia's first issue.

As noted in our recent decision in *Huff v. State*, this court has analyzed *McNeely* on several occasions and held section 724.012(b) is not a valid exception to the Fourth Amendment's warrant requirement. No. 04-13-00891-CV, 2015 WL 1731236, at *14 (Tex. App.—San Antonio Apr. 8, 2015, pet. filed) (citing *Aviles v. State*, 443 S.W.3d 291, 294 (Tex. App.—San Antonio 2014, pet. filed); *McNeil v. State*, 443 S.W.3d 295, 300 (Tex. App.—San Antonio 2014, pet. filed); *Weems v. State*, 434 S.W.3d 655, 665 (Tex. App.—San Antonio 2014, pet. granted)). The Texas Court of Criminal Appeals rendered a similar decision in *Villarreal v. State*, No. PD-0306-14, 2014 WL 6734178, at *9–*10 (Tex. Crim. App. Nov. 26, 2014, reh'g granted).

Recognizing the precedent from the Court of Criminal appeals and this court, the State apparently concedes the warrantless blood draw cannot be justified pursuant to the provisions of section 724.012(b) of the Texas Transportation Code. We agree. However, the State argues that even if the blood draw was impermissible under section 724.012(b), the blood evidence was properly admitted under the good faith exception to the exclusionary rule. We recently addressed this issue in *Huff*, a case involving a fatality accident just as in this case, and held the good faith exception was inapplicable. 2015 WL 1731236, at *16.

As we recognized in *Huff*, although the federal exclusionary rule usually precludes the use of evidence obtained in violation of the Fourth Amendment, "if law enforcement personnel rely in

good faith on a statute authorizing a warrantless search, and the statute in question is later found to be unconstitutional, the evidence seized need not be excluded." *Id.* (citing *Illinois v. Krull*, 480 U.S. 340, 347 (1987)). However, we observed that section 724.012(b) — the mandatory blood draw statute — does not provide for a warrantless search. *Id.* (citing TEX. TRANSP. CODE ANN. § 724.012(b)). "Although the statute states an officer shall take a blood draw if an individual suffered serious bodily injury as a result of the DWI, it does not *mandate* that he do so without a warrant." *Id.* Accordingly, in *Huff*, we held we could not say the police officer acted in good faith when he failed to obtain a warrant based on section 724.012(b), which does not dispense with the warrant requirement. *Id.* (citing TEX. TRANSP. CODE ANN. § 724.012(b)(1)(B); *McNeil*, 443 S.W.3d at 303).

The same is true in this case. Trooper Kendrick admittedly relied upon section 724.012(b)(1)(A)-(C) when he requested that another trooper mandate a blood draw from Garcia without first obtaining a warrant. Just as the officer in *Huff* could not in good faith rely on Transportation Code when he obtained the blood draw from Huff in the absence of a warrant, Trooper Kendrick could not rely upon it when he mandated a warrantless blood draw from Garcia. *See id.* Accordingly, we hold the good faith exception is inapplicable.

The State further contends that even if the trial court erred in denying the motion to suppress and admitting the results of the blood test, Garcia was not harmed. Because the trial court's error is one of constitutional magnitude, we must reverse the judgment unless we determine beyond a reasonable doubt the trial court's error did not contribute to the conviction. TEX. R. APP. P. 44.2(a); *see Hernandez v. State*, 60 S.W.3d 106, 108 (Tex. Crim. App. 2001) (holding harm analysis for erroneous admission of evidence obtained in violation of Fourth Amendment is Rule 44.2(a)'s constitutional standard). Thus, we must reverse Garcia's conviction unless we conclude beyond a reasonable doubt the trial court's error did not contribute to his conviction, and in doing

so, we consider: (1) the nature of the error; (2) the extent it was emphasized by the State; (3) the probable implications of the error; and (4) the weight the jury likely assigned to it during deliberations. *Snowden v. State*, 353 S.W.3d 815, 822 (Tex. Crim. App. 2011). These factors are not exclusive and other factors may be relevant to the analysis. *Id.* "At bottom, an analysis for whether a particular constitutional error is harmless should take into account any and every circumstance apparent in the record that logically informs an appellate determination whether 'beyond a reasonable doubt [that particular error] did not contribute to the conviction or punishment.'" *Id.* (quoting TEX. R. APP. P. 44.2(a)).

In *Weems v. State*, we held the trial court's error in denying Weems's motion to suppress was harmful where the jury was instructed regarding the definition of intoxication, which included "having an alcohol concentration of 0.08 or more," and there was testimony from a toxicologist that at the time of the blood draw Weems's blood alcohol concentration was 0.18, making it likely that his blood alcohol concentration was 0.24 at the time of the accident. 434 S.W.3d at 667.

Thereafter, in *Huff*, we also held the trial court's erroneous decision denying a motion to suppress was harmful where the State, during voir dire, referenced the Texas blood alcohol limit of 0.08 grams per deciliter, a toxicologist testified Huff's blood sample showed a blood alcohol concentration of 0.17 grams per deciliter — more than twice the legal limit, the toxicology report was admitted into evidence, the State referenced Huff's blood alcohol content during closing argument — noting it was two times the legal limit, and the jury was instructed about the definition of "intoxicated," which included "having an alcohol concentration of .08 or more." 2015 WL 1731236, at *17–*18.

Here, as in *Huff*, the prosecutor referenced the Texas blood alcohol limit of 0.08, stating that if a person has a blood alcohol concentration of 0.08 or more, he is intoxicated. *See id.* at *17. The prosecutor also discussed with the venire "alcohol concentration," with regard to breath,

blood, and urine. After jury selection, during his opening statement, the prosecutor again referenced the 0.08 limit, advising the jury it was one way for the State to prove intoxication. The State called James Burris, a forensic toxicologist, as a witness. Mr. Burris described in detail the procedure used for blood alcohol analysis and specifically stated the standard against which a sample is tested is 0.08. As to Garcia, Mr. Burris testified his testing showed Garcia's blood alcohol content was 0.187 grams per hundred milliliters of whole blood, and therefore, Garcia's blood alcohol content was more than twice the legal limit of 0.08 grams per hundred milliliters of whole blood. The State also introduced, and the trial court admitted into evidence over objection, State's Exhibit 11, a copy of Mr. Burris's report, showing the test results of Garcia's alcohol level — 0.0187. And, just as in *Huff*, the prosecutor noted Garcia's blood alcohol content during closing argument, asking the jurors to "[k]eep in mind that the definition of intoxication includes . . . the .08 — and you heard that [Garcia's] blood alcohol level was .187, more than two times the legal limit." *See id.* Finally, the jury was instructed as to the definition of "intoxicated," just as they were in *Huff*, which included "having an alcohol concentration of 0.08 or more." *See id.*

Based on our prior decisions in *Weems* and *Huff*, as well as the State's references to Garcia's blood alcohol content, the evidence from the toxicologist presented by the State, as well as the definition of "intoxicated" in the charge, we cannot say beyond a reasonable doubt that the trial court's error in denying Garcia's motion to suppress did not contribute to his conviction. *See* TEX. R. APP. P. 44.2(a); *Huff*, 2015 WL 1731236, at *17–*18; *Weems*, 434 S.W.3d at 667. We therefore sustain Garcia's first issue and hold the trial court's error entitles Garcia to a new trial. Based on our holding with regard to Garcia's first issue, we need not address Garcia's remaining issues.

## CONCLUSION

Based on the foregoing, we sustain Garcia's challenge to the trial court's denial of his motion to suppress and hold the trial court's ruling constitutes reversible error, entitling Garcia to a new trial. Accordingly, because the warrantless blood draw violated Garcia's rights under the Fourth Amendment, and we cannot say beyond a reasonable doubt that the erroneous admission of the blood draw results did not contribute to his conviction, we reverse the trial court's judgment and remand this matter to the trial court for a new trial.

Marialyn Barnard, Justice

Do Not Publish