ACCEPTED
05-14-01593-CR
FIFTH COURT OF APPEALS
DALLAS, TEXAS
5/4/2015 6:49:31 PM
LISA MATZ
CLERK

Fifth Court of Appeals
FILED: 5/6/2015
Lisa Matz, Clerk

# FIFTH COURT OF APPEALS

## 05-14-01593-CR

### *Jeffrey Lynn Aday, v. State of Texas*

On Appeal from Trial Court No. 2012-1-0206
County Court At Law No. 1, Grayson County
Hon. James C. Henderson, Presiding

### Appellant's Brief

**John Hunter Smith**
707 W. Washington
Sherman, Texas 75092
Tel. (903)-893-8177
Fax (903)-892-0916
jsmith@wynnesmithlaw.com
Texas Bar No. 24028393

**Kristin R. Brown**
18208 Preston Road, Suite D9375
Dallas, Texas 75252
Phone: 214.446.3909
Fax: 214.481.4868
kbrown@idefenddfw.com
Texas Bar No. 24081458

*Oral Argument is Requested*

*Attorneys for Appellant*

## I. Identities of the Parties and Counsel

*Appellant:*                 **Jeffery Lynn Aday**

*Attorney for Appellant:*     **On Appeal And At Trial**

Mr. John Hunter Smith
Wynne & Smith
707 W. Washington
Sherman, Texas 75092

**On Appeal**

Ms. Kristin R. Brown
Law Office of Kristin R. Brown, PLLC
18208 Preston Road, Suite D9375
Dallas, Texas 75252

*Attorneys for the State:*     Ms. Karla Baugh-Hackett
Mr. Matthew Rolston
Grayson County District Attorney's Office
200 S. Crockett
Sherman, Texas 75090

*Trial Court:*               County Court At Law No. 1
Grayson County, Texas
Honorable James C. Henderson, Presiding

**II. Table of Contents**

I.     Identities of the Parties and Counsel........................................................2

II.    Table of Contents ...................................................................................3

III.   Statement of the Case and Jurisdiction....................................................6

IV.    Statement Regarding Oral Argument........................................................7

V.     Issues Presented:....................................................................................8

VI.    Statement of Facts..................................................................................9

    1.   Appellant files a motion to suppress evidence......................................9

    2.   Evidence presented at the hearing on Appellant's Motion
        to Suppress .........................................................................................9

    3.   The trial court denied the motion based on implied
        consent and exigent circumstances, and then reversed
        itself, in part, upon Appellant's filing of a Motion to
        Reconsider after the Texas Court of Criminal Appeals
        decided *Villarreal*.............................................................................12

VII.   Summary of the Arguments ...................................................................13

VIII.  Argument ..............................................................................................15

1.  Issue One: Under the Fourth Amendment of the United States Constitution, the holding in Missouri v. McNeely, and the holdings of other Texas courts of appeal, the trial court erred when it denied Appellant's motion to suppress the blood test results because: (1) Thomas admitted he did not even try to obtain a warrant for Appellant's blood; (2) there were no exigent circumstances justifying the warrantless blood draw under Texas Transportation Code § 724.012; (3) Thomas had no probable cause to arrest Appellant; (4) the trial court's decision is not correct on any theory of law applicable to the case; (5) the good-faith exception does not apply in this case; (6) the holding in McNeely apply to this case because this case was pending when McNeely was handed down; and  (7) Appellant was harmed by the trial court's error of denying the motion to suppress.........................15

    i.    Introduction..................................................................................15

    ii.   Standard of review is bifurcated based upon the abuse
        of discretion standard. ..................................................................17

    iii.  McNeely.......................................................................................19

iv.  Statutes implicated by *McNeely*: Texas Transportation Code §724.012 (2012)(mandatory draw statute) and Texas Transportation Code § 724.011 (2012) (implied consent statute) ..................................................................... 24

v.  As held in *Villarreal*, Texas Transportation Code §§ 724.011 and 724.012 violate the Fourth Amendment because these statutes dispense with the Fourth Amendment's warrant requirement and none of the exceptions to the warrant requirement apply. .................................. 28

vi.  Significance of the granting of rehearing by the Court of Criminal Appeals in *Villarreal* ......................................................... 35

vii.  Opinions of other courts of appeal confirm *McNeely* and *Villarreal*, and support Appellant's arguments. ........................ 36

viii.  Under the holdings in *McNeely*, *Villarreal*, and other Texas courts of appeal, the trial court erred when it denied Appellant's motion to suppress because: (1) the officer admitted he did not even try to obtain a warrant for Appellant's blood; (2) there were no exigent circumstances justifying the warrantless blood draw under Texas Transportation Code § 724.012; (3) Thomas had no probable cause to arrest Appellant; (4) and the trial court's decision is not correct on any theory of law applicable to the case. ........................ 49

ix.  Even if Chapter 724.012(b) was constitutional, its requirements cannot be met. ............................................................ 58

x.  The good-faith exception does not apply in this case. ......................... 59

xi.  The holding in *McNeely* applies to this case because this case was pending when *McNeely* was handed down. ...................................................................................... 62

xii.  Appellant was harmed by the trial court's error of denying the motion to suppress. ...................................................... 63

xiii.  Conclusion ...................................................................................... 64

2.  Issue Two:  The trial court erred and Appellant was harmed when the trial court denied Appellant the right to present the totality of the legal evidence raising an issue of material fact, which was an element of the offense, and, which—in turn—allowed the State to admit evidence, obtained

in violation of the Constitutions and laws of the United States of America and the State of Texas, against Appellant at trial. .........................................65

    i.   Statement of Facts.................................................................................65

    ii.   Introduction..........................................................................................67

    iii.   Standard of Review is Abuse of Discretion.....................................67

    iv.   Applicable Law ....................................................................................68

    v.   The trial court abused their discretion in not allowing material evidence—which was both relevant and probative to be introduced to the jury. ..........................................68

    vi.   Conclusion............................................................................................69

IX.   Conclusion and Prayer ........................................................................70

X.   Certificate of Service..........................................................................71

XI.   Certificate of Compliance with Tex. Rule App. Proc. 9.4....................72

To the Honorable Justices of the Court of Appeals:

In support of his appeal, Appellant Jeffrey Lynn Aday submits this Brief:

### III.     Statement of the Case and Jurisdiction

This case is an appeal of a *Judgment of Conviction by Jury* entered and sentence imposed by County Court at Law No. 1 of Grayson County, Texas. (CR, 334-335).[1] On February 9, 2012 the State filed an Information alleging that Appellant committed the criminal offense of Driving While Intoxicated 2nd under Texas Penal Code § 49.04 and 49.09(a) as follows: on or about September 8, 2012, in Grayson County, Texas, Appellant did then and there operate a motor vehicle in a public place while intoxicated, and it is further presented in and to said Court that, prior to the commission of the aforesaid offense on the 18th day of November, 2008, in cause number 2009-1-309 in County Court at Law Number 1 of Grayson County, Texas, the Appellant was convicted of an offense relating to the operation of a motor vehicle while intoxicated (CR, 16).

Appellant filed a motion to suppress evidence, which was denied. (CR, 236). Appellant pleaded "not guilty," and a trial was had before a jury. (RR6, 27). On December 18, 2014, Appellant was convicted of Driving While Intoxicated under Texas Penal Code § 49.04. (CR, 333; RR8, 6). On the same day, Appellant plead true to the enhancement provision of the Information, and was sentenced to 365

---

[1] The Record on Appeal consists of the Clerk's Record, which is one volume, and the Reporter's

days in the County Jail, probated for a period of 18 months; a $500.00 fine; and $449.10 in court costs.  (CR, 334-339; RR8, 20-21).

On December 19, 2014, Appellant filed a timely notice of appeal from the *Judgment of Conviction.*  (CR, 342-343); *See* Tex. Rule App. Proc. 26.2(a) (2015). An amended notice of appeal was timely filed on December 23, 2014.  (CR, 345-346); *See* Tex. Rule App. Proc. 26.2(a) (2015).   The trial court signed a certification of Appellant's right to an appeal, certifying that this is not a plea-bargain case, and that Appellant has the right of appeal.  (CR, 340); *See* Tex. Rule App. Proc. 25.2(a)(2) (2015).  As a result, this Court has jurisdiction over this appeal.

## IV.     Statement Regarding Oral Argument

Appellant requests oral argument. *See* Tex. Rule App. Proc. 39 (2015).

**V. Issues Presented:**

**Issue One: Under the Fourth Amendment, the holdings in McNeely, Villarreal, and other Texas courts of appeal, the trial court erred when it denied Appellant's motion to suppress the blood test results because: (1) Thomas admitted he did not even try to obtain a warrant for Appellant's blood; (2) there were no exigent circumstances justifying the warrantless blood draw under Texas Transportation Code § 724.012; (3) Thomas had no probable cause to arrest Appellant; (4) the trial court's decision is not correct on any theory of law applicable to the case; (5) the good-faith exception does not apply in this case; (6) the holding in McNeely apply to this case because this case was pending when McNeely was handed down; and; (7) Appellant was harmed by the trial court's error of denying the motion to suppress.**

**Issue Two: The trial court erred and Appellant was harmed when the trial court denied Appellant the right to present the totality of the legal evidence raising an issue of material fact, which was an element of the offense, and, which—in turn—allowed the State to admit evidence, obtained in violation of the Constitutions and laws of the United States of America and the State of Texas, against Appellant at trial.**

## VI. Statement of Facts

### 1. Appellant files a motion to suppress evidence

On June 10, 2013, Appellant filed a motion to suppress evidence. (CR, 101–105). Appellant argued that his arrest and apprehension was made without a warrant or probable cause, in violation of the Fourth and Fourteenth Amendments of the United States Constitution, and of Article 1, § 9 of the Texas Constitution. (CR, 101–105). Appellant also argued that the search of Appellant's person was without probable cause, without a warrant, and without exigent circumstances. (CR 101–105). An amended motion was filed on September 13, 2013. (CR, 139–44).

### 2. Evidence presented at the hearing on Appellant's Motion to Suppress

The following evidence was presented at the hearing on the motion to suppress evidence on August 5, 2014: this was a warrantless arrest. (RR2, 4). On September 8, 2011, at 9:54 p.m., Denison Fire Department ("DFD") was dispatched to FM 691 and Pool Road in response to a Motorcycle accident. (RR2, 24, 31). Trooper Shannon Thomas ("Thomas") of the Texas Department of Public Safety arrived on scene at 10:12 p.m. (RR2, 66). When Thomas arrived Appellant had left the scene by ambulance for Texoma Medical Center ("TMC"). (RR2, 42). Trooper Jim Bob Walters arrived on scene shortly thereafter and assisted Thomas with the situation on scene. (RR2, 66–67). There were no bottles, cans, or alcoholic beverages found at the scene. (RR2, 67). No person at the scene reported

suspected alcohol use or the odor of alcohol on Appellant. (RR2, 67–68). Upon arrival to the scene, DFD emergency personnel informed Thomas that Appellant would probably be care-flighted, as he had sustained a traumatic head injury. (RR2, 68). Thomas did not immediately go to the hospital, but rather stayed at the scene until it was clear. (RR2, 46). Thomas arrived at the hospital at approximately 11:00 p.m. (RR2, 62, 69). Upon arrival, TMC emergency room staff informed Thomas that Appellant would be care-flighted. (RR2, 49). Thomas did not immediately go into Appellant's room, but rather waited approximately 20–25 minutes in the waiting area until family cleared Appellant's room. (RR2, 73, 74). Thomas did not request family be cleared from the room. (RR2, 74). Thomas enters Appellant's room at approximately 11:25 p.m. (RR2, 73, 74). Appellant is unconscious and non-responsive, unable to communicate with Thomas. (RR2, 50, 57, 60). Thomas inspects Appellant for the "smell of any alcoholic beverage, marijuana, anything like that" because these are "a very common contributor to crashes." (RR2, 53). Thomas believes he smells an odor of alcohol. (RR2, 53). Thomas leaves the room, and the hospital, and goes out to his car. (RR2, 76). Thomas retrieves a DIC-24 form, a blood kit, and other paperwork. (RR2, 76–77). Thomas goes back to Appellant's ER room at TMC. (RR2, 78). Somewhere between 11:27 and 11:32 p.m., Thomas reads Appellant the DIC 24. (RR2, 79). Appellant does not respond. (RR2, 60). Trooper Thomas

directs hospital personnel to draw Appellant's blood. (RR2, 84). Approximately five minutes later, at 11:37 p.m., Appellant's blood is drawn. (RR2, 84). Appellant did not consent to the blood draw, nor did he refuse the blood draw. (RR2, 57, 60). Thomas made absolutely no effort to get a warrant for appellant's blood. (RR2, 81–83). Thomas did not even consider getting a warrant. (RR2, 82). Thomas believed that he did not need a warrant because Texas Transportation Code 724.011 and 724.014 provided for the taking of a blood specimen under "Implied Consent" (RR2, 81). Implied consent was Thomas's sole reliance for the warrantless taking of Appellant's blood. (RR2, 81). The Defense attorney and Thomas had the following exchange:

Q. And your reliance in getting the blood on this night was implied consent?

A. Yes sir, just under the implied consent.

Q. Implied consent, period?

A. When they are unconscious, yes sir.

(RR2, 81). As to exigent circumstances, Thomas stated that when "[he] was notified that care flight would be - - [he] felt like my time was very limited at that point." (RR 2, 83, 86). Thomas was notified of care flight at 10:12 p.m. and at 11:00 p.m. (RR2, 49, 68).

Thomas has investigated over 600 DWI arrests. (RR2, 36). But, Thomas has only sought blood warrants in 10-12 instances. (RR2, 36–37). Warrants are

gained through fax or hand-delivery of a probable cause affidavit to the judge. (RR2, 37). The judge will typically sign the warrant and return it to the officer. (RR2, 37). A warrant can be gained in as little as 30-45 minutes, calculated from the time of the refusal to the time of the draw. (RR2, 38). Thomas made no effort—zero—to gain a warrant for Appellant's blood, because he did not believe he needed one. (RR2, 81–83).

### 3. The trial court denied the motion based on implied consent and exigent circumstances, and then reversed itself, in part, upon Appellant's filing of a Motion to Reconsider after the Texas Court of Criminal Appeals decided *Villarreal.*

The trial court concluded that based upon the law that the court believes existed at the time of the hearing and rulings of the Texas Court of Criminal Appeals, the Appellant's motion to suppress the blood evidence should be denied based on exigent circumstances and implied consent under Tex. Trans. Code §§ 724.011, 724.014, and in fact denied the motion to suppress. (CR, 236).

After the decision was handed down by the Court of Criminal Appeals in *Villarreal*, Appellant filed a Motion to Reconsider the previously denied Motion to Suppress. (CR, 245–251). The trial court, at the December 12, 2014, pre-trial hearing, announced that the Motion to Reconsider would be granted in part and denied in part. (RR4, 5–8). The court went on to rule that, based on the Court of Criminal Appeals ruling in *Villarreal*, the "alternative grounds" upon which the

court had previously denied the motion to suppress [Implied Consent under Tex. Trans. Code §§724.011, 724.014] could no longer be relied on and, therefore, the court granted the motion to suppress—but only as to implied consent. (RR4, 7–8). However, the court held, the Motion to Reconsider would be denied as to the "previous ruling that the warrantless blood draw did not violate [Appellant's] constitutional right [sic] under the Fourth Amendment due to exigent circumstances. (RR4, 7). Appellant requested the court clarify on what grounds the court based its finding of exigent circumstances. (RR4, 8). The court stated "it was covered in the previous hearing [what those grounds were] and "I'll put it in Findings of Fact and Conclusions of Law if that becomes necessary after the trial." *Id.* (*see* CR 354 at ¶ 28).

## VII. Summary of the Arguments

Appellant presents the following arguments in this Brief:

Issue 1: under the Fourth Amendment of the United States Constitution, the holdings in *McNeely*, *Villarreal*, and other Texas courts of appeal, the trial court erred when it denied Appellant's motion to suppress the blood test results because: (1) Thomas admitted he did not even try to obtain a warrant for Appellant's blood; (2) there were no exigent circumstances justifying the warrantless blood draw under Texas Transportation Code § 724.012; (3) Thomas had no probable cause to arrest Appellant; (4) the trial court's decision is not correct on any theory of law

applicable to the case; (5) the good-faith exception does not apply in this case; (6) the holding in McNeely apply to this case because this case was pending when McNeely was handed down; and; (7) Appellant was harmed by the trial court's error of denying the motion to suppress.

Issue Two: The trial court erred and Appellant was harmed when the trial court denied Appellant the right to present the totality of the legal evidence raising an issue of material fact, which was an element of the offense, and, which—in turn—allowed the State to admit evidence, obtained in violation of the Constitutions and laws of the United States of America and the State of Texas, against Appellant at trial.

Appellant will ask this Court to reverse the *Judgment of Conviction and Sentence*—(Jury Trial), suppress all the evidence seized from Appellant, including the blood results and all evidence due to the illegal arrest, and remand this case back to the trial court for a new trial.

**VIII. Argument**

1. **Issue One: Under the Fourth Amendment of the United States Constitution, the holding in Missouri v. McNeely, and the holdings of other Texas courts of appeal, the trial court erred when it denied Appellant's motion to suppress the blood test results because: (1) Thomas admitted he did not even try to obtain a warrant for Appellant's blood; (2) there were no exigent circumstances justifying the warrantless blood draw under Texas Transportation Code § 724.012; (3) Thomas had no probable cause to arrest Appellant; (4) the trial court's decision is not correct on any theory of law applicable to the case; (5) the good-faith exception does not apply in this case; (6) the holding in McNeely apply to this case because this case was pending when McNeely was handed down; and (7) Appellant was harmed by the trial court's error of denying the motion to suppress.**

   i. **Introduction**

   This case is a "textbook" *McNeely/Villarreal* case that should be reversed and remanded for a new trial. Although the evidence presented at the hearing on Appellant's motion to suppress clearly showed that the only reason why Thomas failed to obtain a warrant for Appellant's blood is because: (1) Thomas believed that implied consent allowed for him to take a sample without a warrant, (2) Thomas reasoned that the BAC of Appellant's blood was dissipating, and (3) Thomas admitted that he did not even bother to try to obtain a warrant for the blood draw. In its FFCL, the trial court clearly erred by concluding that Trooper Thomas did not even need to attempt to secure a warrant because he could not have

reasonably expected to obtain one without impeding the defendant's medical treatment.

Appellant will argue that the rulings in *McNeely*, *Villarreal*, and the other Texas courts of appeal should cause this Court to conclude that the trial court erred when it denied Appellant's motion to suppress. Appellant will begin by analyzing *McNeely*, *Villarreal*, and the opinions of several other Texas courts of appeal. Appellant will then apply the relevant law to the facts of this case.

Appellant also represents that he groups several **closely-related arguments** under one point of error. Listing several **distinctly different arguments** under one point of error, rather than separately listing them, may be considered multifarious. *Burton v. State*, 471 S.W.2d 817, 820-821 (Tex. Crim. App. 1971); *Woodard v. State*, 696 S.W.2d 622, 625 (Tex. App. Dallas 1985, *no pet.*) (A multifarious argument is a ground of error complaining of more than one incident of improper argument). However, the holdings in *Burton* and *Woodard* do not mean that an appellant is unable to make more than one *similarly-related* argument in a single point of error concerning the same overall issue. In *Yuhl v. State*, 784 S.W.2d 714, 716 (Tex. App. Houston [14th Dist.] 1990, *pet. ref.*), the court of appeals expressed doubt the rule that prohibits multifarious points

of error prevents an appellant from making more than one similarly-related argument in a single point of error. In fact, an appellate court may consider several closely-related issues, even if "multifarious," if it is able adequately to distinguish the separate contentions from each other. *Bright v. State*, 556 S.W.2d 317, 319 (Tex. Crim. App. 1977). Thus, the rule prohibiting multifarious arguments merely frowns upon combining more than one *legal theory* in a single point of error. *See Thomas v. State*, 723 S.W.2d 696, 697 n.2 (Tex. Crim. App. 1986).

Because all of the following arguments pertain to Appellant's assertion that the trial court erred and abused its discretion when it denied Appellant's motion to suppress, rather than break down this issue into numerous points of error, which will cause this Brief to spill over the word-limit and will require repetitive arguments on the same contentions, Appellant presents his arguments under a single issue.

### ii. Standard of review is bifurcated based upon the abuse of discretion standard.

In reviewing the trial court's ruling on Appellant's motion to suppress, this court should apply a bifurcated standard of review: almost total deference is given to a trial court's determination of historical facts, but an appellate court reviews de novo the trial court's application of the law to those facts. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim.

App. 2000); *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007). This review is based upon the abuse of discretion standard. *Balentine v. State*, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002); *Montanez v. State*, 195 S.W.3d 101, 108-109 (Tex. Crim. App. 2006). When the trial court's ruling is an application of the law to undisputed facts that do not turn on a question of credibility, this Court's review is de novo. *See Wilson v. State*, 311 S.W.3d 452, 458 (Tex. Crim. App. 2010); *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007) (Almost total deference is given to a trial court's determination of the historical facts that the record supports especially when the trial court's factual findings are based on an evaluation of credibility and demeanor); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

Further, this court should give deference to the historical facts contained in the FFCL of the trial court if the findings are supported by the record. *See Ervin v. State*, 333 S.W.3d 187, 212 (Tex. App. Houston [1st Dist.] 2010); *State v. Cullen*, 195 S.W.3d 696, 698 (Tex. Crim. App. 2006) (Court rejected de novo review of historical facts because trial court in best position to judge credibility and demeanor of witnesses at suppression hearing).

### iii. McNeely

In *Missouri v. McNeely*, 133 S.Ct. 1552 (2013), the Supreme Court mandated that when the state seeks to extract a blood or breath specimen from a DWI suspect, a warrant is generally required. The Court ruled that the natural metabolization of alcohol in the bloodstream does not represent a *per se* exigency that justifies an exception to the Fourth Amendment's warrant requirement for nonconsensual blood testing in all DWI cases. *Id*. at 1568.

The facts of *McNeely* are as follows: the defendant is stopped by the police for speeding and crossing the centerline. *Id*. at 1553-1554. After refusing to take a breath test to measure his blood alcohol concentration (BAC), the defendant is arrested and taken to a nearby hospital for a blood draw. *Id*. at 1554. The officer never attempts to secure a search warrant. *Id*. The defendant refuses to consent to the blood test, but the officer nonetheless orders a lab technician to take a sample of the defendant's blood. *Id*. The defendant's BAC tests well above the legal limit, and he is charged with DWI. *Id*.

The defendant files a motion to suppress the blood evidence, which is granted. *Id*. at 1554. The trial court held that the **exigency exception to the warrant requirement did not apply because, other**

**than the fact that *McNeely*'s blood alcohol was dissipating, there was no emergency**. *Id*. (emphasis added). Relying upon *Schmerber v. California*, 384 U.S. 757, 770 (1966), in which the Supreme Court upheld a DWI suspect's warrantless blood test where the officer "might reasonably have believed that he was confronted with an emergency, and in which under the circumstances, the delay necessary to obtain a warrant threatened the destruction of evidence," the Missouri Supreme Court affirms. *Id*.; *see State v. McNeely*, 358 S.W.3d 65, 74-75 (Mo. 2012).

The Supreme Court affirmed the ruling of the Missouri Supreme Court. In describing the exigent circumstances exception to the Fourth Amendment warrant requirement, the Supreme Court held that the exigent circumstances exception applies where "the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment." *McNeely*, *id*. at 1558, *quoting Kentucky v. King*, 131 S. Ct. 1849, 1856 (2011). While acknowledging its holding in *Schmerber* that "[E]xigent circumstances justifying a warrantless blood draw may arise in the regular course of law enforcement **due to delays from the warrant application process**" (emphasis added), the Court held that "[T]he natural dissipation of alcohol in the bloodstream does

not constitute an exigency in every case sufficient to justify conducting a blood test without a warrant." *Id*. at 1563, 1568.

*McNeely* is in part based upon the fundamental principle that under the Fourth Amendment, a warrantless search of the person is reasonable only if it falls within a recognized exception, and the involuntary taking of blood samples, which involve a "compelled physical intrusion beneath the subject's skin and into his veins" to obtain a sample of his blood for use as evidence in a criminal investigation amounts to an invasion of "bodily integrity" that "implicates an individual's most personal and deep-rooted expectations of privacy. *Id*. at 1558. The Court further held that the mere fact that motorists are allowed less privacy because of the compelling governmental need for regulation does not diminish a motorist's privacy interest in preventing an agent of the government from piercing his skin. *Id*. at 1565

In placing a limitation on the common fallback argument of "exigent circumstances" that the state often uses to justify warrantless searches, the Court not only clarified what constitutes "exigent circumstances," but also concluded that a *per se* rule of exigency based on the natural dissipation of alcohol is inappropriate because it would

apply the exception in circumstances that are inconsistent with the policy justifications that make a warrantless search based on an exigency reasonable. *Id*. at 1560-1563. And to determine whether the police face an emergency that justifies acting without a warrant, a court must look at the totality of circumstances based upon each case's own facts and circumstances. *Id*. at 1559. This includes determining whether the warrantless blood test of a DWI suspect is reasonable. *Id*. at 1563.

The Court held that **in DWI cases where officers can reasonably obtain a warrant before a blood draw is done**, **the Fourth Amendment mandates that they do so**. *Id*. at 1561 (emphasis added). Although exigent circumstances justifying a warrantless blood draw may arise in the regular course of law enforcement due to delays from the warrant application process, the mere "the natural dissipation of alcohol in the bloodstream does not constitute an exigency in every case sufficient to justify conducting a blood test without a warrant." *Id*. at 1563, 1568.

This language differentiates the situation in *McNeely*, where "BAC evidence from a DWI suspect naturally dissipates over time in a gradual and relatively predictable manner," from the situation where a suspect "has control over easily disposable evidence." The language also makes clear that there is a difference between a substantial delay in

the warrant application process that may result in **all** the BAC in a suspect's blood from dissipating versus a short delay or no delay at all in the warrant application process.

In other words, if an officer is unable to obtain a warrant for over 24 hours due to a delay in the warrant application process, and as a result, all the alcohol in the suspect's blood may dissipate during the delay, a warrantless blood draw could be reasonable. But where there is little delay in the warrant application process, or as in Appellant's case, where Thomas did not even try to obtain a warrant and less than ten to fifteen minutes passed between the arrest and the warrantless blood draw, the Fourth Amendment mandates that the officer obtain a warrant before drawing blood.

As a result, the fact that alcohol rapidly dissipates from the bloodstream does not create a *per se* exigent circumstance. *Id*. at 1562. Instead, the dissipation of alcohol may be a factor, among others, in the exigency analysis under the larger totality of the circumstances test. *Id*. A trial court should conduct a "careful case- by-case assessment of exigency and . . . [that i]n those drunk-driving investigations where police officers can reasonably obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search,

the Fourth Amendment mandates that they do so." *Id*. at 1561.

*McNeely* reinforces the basic principle that absent one of the generally- accepted exceptions (i.e., consensual searches, certain brief investigatory stops, searches incident to a valid arrest, plain-view doctrine, exigent circumstances); the Fourth Amendment requires a warrant. And, the natural dissipation of alcohol in the bloodstream is not by itself one of the accepted exceptions to the warrant requirement. This holding is logical because unless a DWI suspect has immediate access to blood transfusion apparatus, enabling the suspect (while under arrest) to lower his or her BAC by removing the tainted blood from his or her system and replacing it with blood untainted with alcohol, it is impossible for a DWI suspect to "dispose of the evidence" in a DWI case (i.e., the blood flowing through his or her veins). Absent this far-fetched scenario, *McNeely* holds that if the state wants a sample of the suspect's blood, and there is little to no delay in the warrant application process, the **state must obtain a warrant**.

### iv. Statutes implicated by *McNeely*: Texas Transportation Code §724.012 (2012)(mandatory draw statute) and Texas Transportation Code § 724.011 (2012) (implied consent statute)

Although the implied consent statute (Texas Transportation Code § 724.011) was not directly implicated in this case, considering the trial

courts decision on Appellant's Motion to Reconsider Denial of Defendant's Motion to Suppress Evidence, Appellant will review its possible applicability should this Court apply the so-called "*Calloway* rule*," which allows this Court to affirm the trial court's decision based on any theory of law applicable to the case. *See Calloway v. State*, 743 S.W.2d 645, 651-652 (Tex. Crim. App. 1988) (An intermediate appellate court should reject an appellant's claim of reversible error on direct appeal so long as the trial court correctly rejected it "on any theory of law applicable to the case," even if the trial court did not purport to rely on that theory.). Under the "*Calloway* rule," the prevailing party in the trial court need not have explicitly raised that alternative theory in the court below to justify the appellate court's rejection of the appellant's claim. *Id*., *see also State v. Esparza*, 413 S.W.3d 81, 86-88 (Tex. Crim. App. 2012). Texas Transportation Code § 724.011, the implied consent statute, provides as follows:

> (a) If a person is **arrested for an offense** arising out of acts alleged to have been committed while the person was **operating a motor vehicle in a public place**, or a watercraft, **while intoxicated**, or an offense under Alco. Bev. Code § 106.041 (DUI by minor), **the person is deemed to have consented**, subject to this chapter, **to submit to the taking of one or more specimens of the person's breath or blood for analysis to determine the alcohol concentration** or the presence in the person's body of a controlled substance, drug, dangerous drug, or other

substance.

(b) A person arrested for an offense described by Subsection (a) may consent to submit to the taking of any other type of specimen to determine the person's alcohol concentration.

Tex. Transp. Code § 724.011 (2012) (emphases added).

The statute directly implicated in this case, Texas Transportation Code § 724.012, the "mandatory draw statute," provides as follows (emphases added):

(a) One or more specimens of a person's breath or blood **may** be taken if the person is arrested and at the request of a peace officer having reasonable grounds to believe the person:

(1) while intoxicated was operating a motor vehicle in a public place, or a watercraft; or

(2) was in violation of Alco. Bev. Code § 106.041 (DUI by minor).

*(b)* A peace officer **shall** require the taking of a specimen of the person's breath or blood under any of the following circumstances **if the officer arrests the person for an offense under Tex. Pen. Code Chapter 49** involving the operation of a motor vehicle or a watercraft *and the person refuses the officer's request to submit to the taking of a specimen voluntarily:*
(1) the person was the operator of a motor vehicle or a watercraft **involved in an accident** that the officer reasonably believes occurred as a result of the offense and, at the time of the arrest, the officer reasonably believes that **as a direct result of the accident**:

(A) **any individual has died or will die;**
(B) **an individual other than the person has suffered**

**serious bodily injury; or**

**(C)  an individual other than the person has suffered bodily injury and been transported to a hospital or other medical facility for medical treatment;**

(2)  the offense for which the officer arrests the person is an offense under Tex. Pen. Code § 49.045 (DWI with child passenger); or

(3)  at the time of the arrest, the officer possesses or receives reliable information from a credible source that the person:

**(A)**   has been previously convicted of or placed on community supervision for an offense under Tex. Pen. Code § 49.045 (DWI with child passenger), § 49.07 (Intoxication Assault), or § 49.08 (Intoxication Manslaughter), or an offense under the laws of another state containing elements substantially similar to the elements of an offense under those sections; or

**(B)** on two or more occasions has been previously convicted of or placed on community supervision for an offense under Tex. Pen. Code § 49.04 (DWI), § 49.05 (FWI), § 49.06 (BWI), or § 49.065 (Assembling/Operating Amusement Ride), or an offense under the laws of another state containing elements substantially similar to the elements of an offense under those sections.

*(c)*  **The peace officer shall designate the type of specimen to be taken.**

*(d)* In this section, "bodily injury" and "serious bodily injury" have the meanings assigned by Tex. Pen. Code § 1.07

Tex. Transp. Code § 724.012 (2012).  "Bodily injury" means physical pain,

illness, or any impairment of physical condition. Tex. Pen. Code § 1.07(a)(8) (2012). "Serious bodily injury" means bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ. Tex. Pen. Code § 1.07(a)(46) (2012).

Regardless of whether an exception to the warrant requirement described above exists, both Texas Transportation Code §§ 724.011 and 724.012 allow law enforcement to draw blood without a warrant. No mention of the requirement of exigent circumstances exists in the statutes. As the *McNeely* analysis above shows and the following analysis will show, Texas Transportation Code §§ 724.011 and 724.012 violate the Fourth Amendment and are unconstitutional.

**v. As held in *Villarreal*, Texas Transportation Code §§ 724.011 and 724.012 violate the Fourth Amendment because these statutes dispense with the Fourth Amendment's warrant requirement and none of the exceptions to the warrant requirement apply.**

In this subsection, Appellant will analyze *Villarreal*, which although is pending rehearing, settled this issue in Texas. *See State v. Villarreal*, ___ S.W.3d ___ , 13-13-00253-CR, 2014 Tex. App. LEXIS 645 (Tex. App. Corpus Christi, January 23, 2014), *affirmed*, *State v. Villarreal*, Tex. Crim. App. LEXIS 1898 (Tex. Crim. App. 2014, *reh.*

*granted*). In *Villarreal*, the defendant is arrested for DWI. *Villarreal*, 13-13-00253-CR*, id*. at \*2. The defendant had three prior DWI convictions, so Texas Transportation Code § 724.012(b)(3)(B) was implicated, which allows a mandatory blood draw if "[O]n two or more occasions, [the defendant] has been previously convicted of or placed on community supervision for an offense under Tex. Pen. Code § 49.04 (DWI).... Tex. Transp. Code § 724.012(b)(3)(B) (2012). The defendant refuses all SFSTs and the requested blood draw. *Id*. at \*2-3. The state concedes that there were no exigent circumstances. *Id*. at \*3. The defendant is forced to submit to a warrantless blood draw. *Id*. The BAC of the defendant's blood was over the legal limit, so the defendant is charged with felony DWI. *Id*. The trial court grants Appellant's motion to suppress, finding that the officer's own testimony shows that that he "could have gotten a warrant for the blood draw and there were no exigent circumstances that would have prevented him from getting a warrant." *Id*. at \*4.

The court of appeals cites *McNeely*, 133 S.Ct. 1552, and affirms that in DWI cases where officers can reasonably obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search, "the Fourth Amendment mandates that they do so." *Id*. at \*33. In *Villarreal*, the officer's sole basis for not getting a warrant was that the

repeat offender provision of the mandatory blood draw law required him to take a blood sample without the defendant's consent and without the necessity of obtaining a search warrant. *Id*. The court of appeals held that although Texas Transportation Code § 724.012(b)(3)(B) **requires** an officer to obtain a breath or blood sample, it does **not require** the officer to obtain a breath or blood sample **without first obtaining a warrant**. *Id*. at *34 (emphases added); *See* Tex. Transp. Code § 724.012(b)(3)(B) (2012). The court of appeals also found that Texas Transportation Code § 724.012(b)(3)(B) ". . . does not address or purport to dispense with the Fourth Amendment's warrant requirement for blood draws." *Id*. at *34.

The court of appeals concludes, "[G]iven the absence of a warrant, the absence of exigent circumstances, and the absence of consent, we agree with the trial court's conclusion that the State failed to demonstrate that the involuntary blood draw was reasonable under the Fourth Amendment or that an exception to the Fourth Amendment's warrant requirement is applicable to this case, as was its burden." *Id*., *citing* U.S. Const. Amend. IV.

On November 26, 2014, the Court of Criminal Appeals settled the issues before this Court and affirmed *Villarreal*. In *State v. Villarreal*, PD-0306-14, 2014 Tex. Crim. App. LEXIS 1898 (Tex. Crim. App. 2014),

the Court of Criminal Appeals held that a nonconsensual search of a DWI suspect's blood conducted under the mandatory-blood-draw and implied-consent provisions in the Texas Transportation Code, when undertaken in the absence of a warrant or any applicable exception to the warrant requirement, violates the Fourth Amendment. *Villarreal*, PD-0306-14, *id*. at *79. The majority opinion of the Court of Criminal Appeals is lengthy, so Appellant will address the most relevant parts here.

The opinion centers on the Transportation Code's implied-consent provision, mandatory-blood-draw provision, and *McNeely*. As the Court writes, and like in Appellant's case, "the State relies upon (§§ 724.011 and 724.012) as constituting a valid substitute for a warrant..." *Id*. at *19. Of particular importance to Appellant's case, after the trial court's reconsideration of the Appellant's Amended Motion to Suppress is § 724.012(b), which coerces a defendant to provide a specimen if "...the officer arrests the persons for an offense under Chapter 49, Penal Code, involving the operation of a motor vehicle or a watercraft **and the person officer's request to submit to the taking of a specimen voluntarily;** the person was the operator of a motor vehicle . . . the officer reasonably believes occurred as a result of the offense, and, at the time of the arrest, the officer reasonably believes that as a direct result of the accident any

individual has died or will die . . . . " *Id.* at *22-23.

The Court begins with a review of basic Fourth Amendment law, which provides that to comply with the Fourth Amendment, a search of a person who is subject to a criminal investigation: (1) requires a search warrant or a recognized exception to the warrant requirement, and (2) must be reasonable under the totality of the circumstances. *Id.* at *24. And, "of particular relevance to DWI cases... the Fourth Amendment is implicated in that (3) the collection of a suspect's blood invades a substantial privacy interest, and (4) the exigent circumstances exception to the search-warrant requirement is not established merely by the natural dissipation of alcohol." *Id.* The Court also emphasizes the requirement of search warrants unless the "search of the person falls within a recognized exception" to the warrant requirement." *Id.* at *25-26, *citing* U.S. Const. Amend. IV; *Riley v. California*, 134 S. Ct. 2473, 2482 (2014) and *Brigham City v. Stuart*, 547 U.S. 398,

403 (2006); *McNeely*, 133 S. Ct. at 1558.

Next, the Court discusses that the reasonableness of a search must be considered under the totality of the circumstances. *Id.* at *27; *citing Samson v. California*, 547 U.S. 843, 848 (2006) and *Brigham City*, 547 U.S. at 406. And "[G]iven this totality-of-the-circumstances approach,

for the most part, '*per se* rules are inappropriate in the Fourth Amendment context.'" *Id*. at *27; *citing United States v. Drayton*, 536 U.S. 194, 201 (2002). The implied-consent and mandatory-blood-draw provisions of the Texas Transportation Code are "*per se* rules" that violate the Fourth Amendment.

The Court of Criminal Appeals continues by noting that the collection of a person's blood invades a substantial privacy interest because it "plainly involves the broadly conceived reach of a search and seizure under the Fourth Amendment..." due to "the interest in human dignity and privacy which the Fourth Amendment protects." *Id*. at *27-28; *citing Schmerber v. California*, 384 U.S. 757, 767-770 (1966). And, "...the need to secure a warrant from a "neutral and detached magistrate" before permitting a law-enforcement officer to "invade another's body in search of evidence of guilt is indisputable and great." *Id*. at *28, *citing Schmerber, id*. at 770. Although the Supreme Court upheld the warrantless search of Schmerber's blood, it did so on the basis of exigent circumstances. *Id*. at
*28, citing *Schmerber, id*. at 770-772.

The question thus is whether the mere natural dissipation of alcohol in a defendant's blood constitutes exigent circumstances. Based

upon the Supreme Court's ruling in *McNeely*, the Court of Criminal Appeals held that it does not. *Id*. at *29-50. As the Court notes, the Supreme Court held that "the natural dissipation of alcohol does not constitute a *per se* exigency," and "consistent with general Fourth Amendment principles, exigency in this context must be determined case by case based on the totality of the circumstances." *Id*. at *29-30; *citing McNeely*, *id*. at 1557. As Appellant argues in this Brief, under the totality of the circumstances, the natural dissipation of alcohol combined with the fact that Thomas admitted that he did not even bother to attempt to obtain a warrant renders the blood draw in Appellant's case unconstitutional under the Fourth Amendment and *McNeely*.

The Court of Criminal Appeals rejects all of the State's arguments under: (1) the consent exception, applicable in the form of a prior waiver through implied consent, (2) the automobile exception, (3) the special-needs exception, (4) the search-incident-to-arrest exception, or, alternatively, (5) by treating a blood draw as a seizure instead of a search. *Id*. at *31-50. In rejecting the State's arguments, the Court held that a nonconsensual search of a DWI suspect's blood conducted under the mandatory-blood-draw and implied-consent provisions in the Transportation Code, when undertaken in the absence of a warrant or any

applicable exception to the warrant requirement, violates the Fourth Amendment. *Id*. at *79.

### vi. Significance of the granting of rehearing by the Court of Criminal Appeals in *Villarreal*

Although the Court of Criminal Appeals granted rehearing in *Villarreal*, it is clear that if the Court were to find Texas Transportation Code § 724.012 (mandatory draw statute) or Texas Transportation Code § 724.011 (implied consent statute) to be **exceptions** to the warrant requirement, the Court would clearly violate the Supreme Court's opinion in *McNeely*. *McNeely* held that the natural dissipation of alcohol is not a *per se* exigent circumstance. And, it is unlikely the Supreme Court would have granted certiorari if the majority did not believe the warrant requirement to be critical. Further, because of the summary grant and vacatur in *Aviles*, Appellant contemplates that the Court of Criminal Appeals will again hold that both Texas Transportation Code § 724.012 (mandatory draw statute) and the Texas Transportation Code § 724.011 (implied consent statute) violate the Fourth Amendment.

It should also be noted that *McNeely* is the law until the Supreme Court overrules it. In *Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.*, 460 U.S. 533, 535 (1983), the United States Supreme Court ruled that "...only this Court may overrule one of its precedents." The issue in

*Thurston Motor Lines* was that the 9th Circuit was unclear whether the holding in a prior Supreme Court case in "…is still good law." *Id*. The Supreme Court held that until it overrules one of its precedents, any of its prior holdings "…is the law." *Id*. Thus, only the Supreme Court may overrule *McNeely*.

### vii. Opinions of other courts of appeal confirm *McNeely* and *Villarreal*, and support Appellant's arguments.

Next, in *Weems v. State*, 434 S.W.3d 655 (Tex. App. San Antonio 2014), at about 11:30 p.m., a car accident occurs. *Id*. at 658. The driver (Weems), who had been drinking, flees the scene, and is found a quarter mile from the crash site hiding underneath a vehicle. *Id*. Weems has cuts, scrapes, and bruises consistent with the crash. A "strong odor of alcohol emanated from his (Weems's) breath." *Id*. Weems has "bloodshot eyes." The passenger is transported to the hospital by ambulance. *Id*. After being read the DIC-24 form, Weems refuses to provide a breath or blood specimen. No SFSTs were performed because Weems was involved in a car crash and complained of back and neck pains. *Id*. Because of his medical complaints, Weems was transported to the hospital, and about three hours after the crash, a warrantless "mandatory" blood draw is taken at 2:30 a.m. *Id*. Weems's BAC is measured to be 0.18, well above the legal limit of 0.08. Expert testimony shows that an

average person eliminates alcohol at about 0.02 grams per deciliter per hour. *Id*. Therefore, a person who had a BAC of 0.18 at 2:30 a.m. and did not drink any additional alcohol would have had a BAC 0.24 at 11:30 p.m. *Id*. As a result, it was estimated that Weems probably consumed about twelve drinks before he drove that evening immediately prior to the accident. *Id*.

The officer testified that the reason he caused a warrantless blood draw from Weems was because Weems drove a car involved in a crash that injured a passenger, thus implicating Texas Transportation Code § 724.012(b)(1)(C). *Id*.; *see* Tex. Transp. Code § 724.012(b)(1)(C) (2012). Weems is convicted of DWI.

Agreeing with the Thirteenth Court of Appeals in *Villarreal*, and the Seventh Court of Appeals in *Sutherland v. State*, 436 S.W.3d 28, 29-31 (Tex. App. Amarillo 2014, *reh. overruled*), the Fourth Court of Appeals recognized that **the implied consent statute [Tex. Transp. Code § 724.011 (2012)] and the mandatory blood draw statute [Tex. Transp. Code § 724.012 (2012)] are not exceptions to the warrant requirement of the Fourth Amendment**. *Id*. at 665 (emphases added). The Fourth Court of Appeals also recognized that in *Aviles*, 385 S.W.3d 110, *vacated*, 134 S.Ct. 902 (2014), it incorrectly relied upon the dicta in

*Beeman v. State*, 86 S.W.3d 613, 615 (Tex. Crim. App. 2002), in which the Court of Criminal Appeals discussed that the implied consent statute expanded the State's authority to draw a DWI suspect's blood in the absence of a warrant, dicta that is incorrect in light of *McNeely* (*Aviles* also implicated the implied consent and mandatory draw statutes). *Id*. at 660.

Like in *Villarreal*, *Sutherland*, and *Aviles*, in *Weems*, no exigent circumstances existed because the officer admitted that: (1) he made no effort to obtain a warrant; (2) there were other officers present at the scene; (3) there was an accident, (4) the passenger was injured and taken to the hospital, and (5) the driver also complained of being injured and was taken to the hospital. *Id*. at 666. The Fourth Court of Appeals also indicated that "[T]he record does not reflect other factors that would be relevant under the totality of the circumstances, including 'procedures in place for obtaining a warrant or the availability of a magistrate judge' and 'the practical problems of obtaining a warrant within a timeframe that still preserves the opportunity to obtain reliable evidence.'" *Weems*, *id*. at 666, *citing McNeely*, 133 S.Ct. at 1568.

Therefore, under the totality of the circumstances, the warrantless blood draw was not justified by the exigency circumstances

exception. *Id*. at 666. And, the Fourth Court of Appeals erroneously held that a warrantless blood draw of a DWI suspect that was conducted under the Transportation Code did not violate the suspect's rights under the Fourth Amendment, and whether the officer could have obtained a warrant before authorizing the blood draw was "immaterial given the mandate of section 724.012(b)(3)(B)." *Weems*, *id*. at 660.

In *Aviles*, the defendant was stopped for suspicion of DWI. *Aviles*, 385 S.W.3d at 112. Upon learning that the defendant had two prior DWI convictions, the officer requested a breath or blood specimen. *Id*. The defendant refused, so the officer compelled a blood draw under Texas Transportation Code § 724.012(b)(3)(B). After the Fourth Court of Appeals affirmed his conviction and the Court of Criminal Appeals denied discretionary review [*See In re Aviles*, PD-1508-12, 2013 Tex. Crim. App. LEXIS 770 (Tex. Crim. App., May 8, 2013) (Meyers, J. would grant)], the defendant filed a petition for a writ of certiorari with the Supreme Court. The Supreme Court granted certiorari and issued a one- paragraph order, vacating the opinion of the Fourth Court of Appeals, and remanded the case "for further consideration in light of *Missouri v. McNeely*." *Aviles*, 134 S.Ct. at 902. Although the Supreme Court's opinion in *Aviles* is short and at first

glance does not appear to hold precedential value, the fact that the Supreme Court issued the summary reversal and reversed the Fourth Court of Appeals "for further consideration in light of *Missouri v. McNeely*" should make it clear to all Texas courts how the Supreme Court views warrantless blood draws merely because a defendant such as Appellant has two or more prior convictions for DWI.

Then in *Gentry v. State*, 12-13-00168-CR, 2014 Tex. App. LEXIS 9538 (Tex. App. Tyler, August 27, 2014) (not designated for publication), the defendant is stopped for traffic violations. *Id*. at *1. The officer observes a spilled cooler of beer in the rear seat. *Id*. When the officer spoke to the defendant, the officer noticed that the defendant's "speech was slurred, his eyes were bloodshot, and his breath smelled of alcohol." *Id*. After performing SFSTs on the defendant, the officer arrested the defendant. *Id*. The defendant refused to submit to a breath test. *Id*. The officer discovered that the defendant had at least two prior convictions for DWI, thus implicating Texas Transportation Code § 724.012(b)(3)(B), which allows a mandatory blood draw if "[O]n two or more occasions, [the defendant] has been previously convicted of or placed on community supervision for an offense under Tex. Pen. Code § 49.04 (DWI).... Tex. Transp. Code § 724.012(b)(3)(B) (2012). The

defendant files a motion to suppress under *McNeely,* which is denied by the trial court. *Gentry, id*. at *2. Appellant pleads guilty to the charge in the indictment, elects to have a jury assess punishment, and receives life in prison. *Id*.

Under the holding in *McNeely*, and also citing *Aviles*, *Weems*, *State v. Ballard*, No. 11-13-00224-CR, 2014 Tex. App. LEXIS 8373, 2014 WL 3865815, at *3 (Tex. App. Eastland July 31, 2014, *no pet. h*.) (not designated for publication); *Sutherland*; and *Villarreal*, in *Gentry*, the Twelfth Court of Appeals held that the implied consent and mandatory blood draw statutory schemes in the Texas Transportation Code are not exceptions to the warrant requirement under the Fourth Amendment. *Gentry*, *id*. at *9. The Twelfth Court of Appeals also found that the State "relied solely on Texas Transportation Code § 724, and offered no evidence of any other recognized exception to the Fourth Amendment that would have permitted it to have Appellant's blood drawn without a warrant." *Id*. As a result, the trial court abused its discretion in denying Appellant's motion to suppress. *Id*. at *11.

In *State v. Baker*, PD-1592-13 (Tex. Crim. App., October 15, 2014), the Court of Criminal Appeals dismissed the State's petition for discretionary review as improvidently granted. The underlying case, *State*

*v. Baker*, No. 12-12- 00092-CR, 2013 Tex. App. LEXIS 12818 (Tex. App. Tyler, October 16, 2013) (not designated for publication), was one of the first post-*McNeely* decisions by a Texas court of appeals. In *Baker*, the officer told the defendant that he was required to provide a mandatory blood specimen, which caused the defendant to "consent" to the blood draw. *Id*. at *28. The trial court found that the State failed to show by clear and convincing evidence that the defendant voluntarily consented to the taking of his blood. *Id*. at *28-29 The Court of Appeals affirmed, holding that because the defendant signed the consent form only after the officer told him that a blood specimen was mandatory and transported him to a hospital, "the trial court could have reasonably concluded under the totality of the circumstances that (the defendant) acquiesced to a claim of lawful authority at the time he signed the form." *Id*.

Although the Court of Criminal Appeals dismissed the State's petition for discretionary review as improvidently granted, and precedential value is not added to the opinion of the court of appeals as a result, the fact that the Court of Criminal Appeals did so may provide insight to how the Court of Criminal Appeals will ultimately rule in the *McNeely* line of cases, most probably with its rehearing in *Villarreal*.

Appellant believes that the Court of Criminal Appeals will conclude that Texas Transportation Code §§ 724.011 and 724.012 violate the Fourth Amendment because these statutes dispense with the Fourth Amendment's warrant requirement and none of the exceptions to the warrant requirement apply.

The Fourteenth Court of Appeals, in *Douds v. State*, while recognizing that an accident—in some instances—may provide exigent circumstances, held that "[e]ven if an officer's investigation of a serious accident lasts for an hour, the availability of another officer 15 minutes into the investigation could significantly reduce the delay necessary to obtain a warrant." *Douds v. State*, 434 S.W.3d 842, 853 (Tex. App.—Houston [14th District] (en banc), (pet. Granted). The court of appeals also pointed out that courts are not responsible for grading the severity of an accident. *Id.* "To ensure that the exigencies of the situation make dispensing with the warrant requirement 'imperative,' courts must focus on whether the State showed that the police could not reasonably obtain a warrant, not on whether it showed how severe the accident was." *Id.* (internal cites omitted). Focusing on a delay attendant to investigation "runs afoul of courts' long held aversion to tests that allow law enforcement officers to "create the exigency." *Id.* at 854.

In *Douds*, the record does not show what time was necessary to obtain a warrant. *Id.* at 855. The record did show that between 2:36 a.m. and 4:45 a.m.—when Douds' blood was drawn—at least two officers and EMS/Fire personnel were on the scene of Douds' accident. *Id.* The court of appeals found there were no facts on the record to support a reasonable conclusion that it was somehow impractical to obtain a warrant during this two-hour period. *Id.* Nor was there any evidence that a further delay to obtain a warrant "would have threatened the destruction of evidence that is lost gradually and relatively predictably." *Id.* (citing *McNeely*, 133 S. Ct. at 1561, 1563).

In *McNeil v. State*, the Fourth Court of Appeals faced circumstances similar to the case at bar. *McNeil v. State*, 2014 Tex. App. LEXIS 8519, No. 04-13-00415-CR (Tex. App.—San Antonio, Aug. 6, 2014, pet. filed). In *McNeil*, the officer testified that he did not attempt to obtain a warrant, but instead relied solely on §724.012 of the Texas Transportation Code. *Id.* at *10-11. Upon questioning, the officer explained the procedures for getting a warrant and that it would likely take 20-30 minutes to reach an investigator, who would then reach out to a magistrate for a warrant. Testimony further showed that an investigator could have been called to begin the warrant process, but the officer did not call one. In holding that

no exigency existed considering the totality of the circumstances, the San Antonio court of appeals stated that the officer "never thought about obtaining a warrant, though he knew he could, if he needed to" and never "took a single step to get a warrant." *Id.* at 14.

Finally, Appellant asks this Court to consider *Bowman v. State*, 2015 Tex. App. LEXIS 1285, No. 05-13-01349-CR (Ct. App.—Dallas, Feb. 10, 2015) (pet. reh'g filed), not designated for publication. In *Bowman*, Officer Hoya of the McKinney Police Department was working patrol when he noticed a Volkswagen "off the street" with "heavy front-end damage" from hitting a telephone pole. *Id.* at *3. Hoya saw Bowman standing at the passenger door of the car and found a female in the passenger seat, still buckled in, who was crying and appeared to be suffering internal injuries. *Id.* at *4. Hoya believed, based on Bowman's appearance and a strong odor of alcohol coming from his breath, that Bowman might be intoxicated, but no field sobriety tests were done. *Id.* Both Bowman and the female were transported by ambulance to a hospital in Frisco, about 30 miles away. *Id.* at *4–5. Hoya followed in his patrol car. *Id.* at *5. At the hospital, Hoya placed Bowman under arrest and read him the DIC-24 warning. *Id.* Bowman did not consent to providing as blood sample, so Hoya "had the nurse take a mandatory

specimen from him," citing "two authorizations" within the Texas Transportation Code: (1) an injured person, transported to the hospital; and (2) Bowman had "previous DWI convictions." *Id.* Hoya did not make any effort to obtain a warrant, instead relying solely on the "Transportation Code Statute." *Id.*

Hoya did testify, however, that while was no "on-call judge" that night; a municipal judge was available [who did not accept faxed warrants]. *Id.* And, that had he attempted to get a warrant, it would have taken "maybe an hour to an hour and a half to get the warrant plus a little additional driving time." *Id.*

"According to Hoya, the 'exigency factors' he considered when making the decision to obtain a mandatory blood draw were: (1) '[j]ust the time it would take to get the blood warrant would have been quite sometime [sic]' and (2) "plus, I had [the passenger], who I believe was seriously injured." *Id.* at 6–7. Hoya testified this was "not a routine DWI investigation." *Id.* at 7.

On cross-examination, however, the timeline was fully explored, and it was revealed that (*inter alia*): (1) the paramedics were told to transport Bowman and that it would be a "mandatory draw;" (2) Hoya took time to search in Bowman's car for keys and the passenger's shoes;

(3) Hoya "had time to 'talk to' and 'make jokes with' the back-up officers at the scene;" (4) one of the other officers could have gone with Hoya to the hospital; (5) warrants take "about an hour" following a refusal; (6) Hoya can prepare the warrant remotely, on his laptop; and (7) a typical roadside DWI investigation takes about 30 minutes. *Id.* at *6–8. Though time-wise, the interaction with Bowman could be considered standard, Hoya testified that this was not a standard DWI investigation, because the occupants were [injured and] transported to the hospital. *Id.* at *8. The trial court denied Bowman's motion to suppress, based on exigent circumstances and Texas Transportation Code §724.012. *Id.* at *14.[2] This Court, in reviewing the case on appeal, reversed. In holding that exigent circumstances did not exist, this Court made two important findings: (1) that the State is responsible for showing facts and circumstances "beyond the passage of time and the resulting dissipation of alcohol in the bloodstream." *Id.* at *37, *quoting Douds*, 434 S.W.3d at

---

[2] Interestingly, the trial court—in its Findings of Fact and Conclusions of Law—stated two things which do not bear out under existing case law: (1) "At the time of the offense, a mandatory blood draw under Texas Transportation Code §724.012 was not in conflict with the case law;" and (2) "Officer Hoya had a *good faith basis* to request a mandatory blood draw. . . ." While (1) is true, the fact that the statute has since been found unconstitutional (by the Court of Criminal Appeals in *Villarreal*) means that it makes little difference that it once was believed constitutional. Regarding (2), as the Texas Court of Criminal Appeals made clear in *Villarreal, supra*: Section 724 of the Texas Transportation code "...does not address or purport to dispense with the Fourth Amendment's warrant requirement for blood draws." *Villarreal*, 2014 Tex. Crim. App. LEXIS 1898 at *18; *see also, McNeil*, 2014 Tex. App. LEXIS 8519 at *16, ("It cannot be said that [an officer] acted in good faith when he failed to obtain a warrant based on a statute that does not dispense with the warrant requirement.").

851; and (2) "the State must show that the time necessary to obtain a warrant under the circumstances threatened the destruction of the blood evidence" *Bowman*, 2015 Tex. App. LEXIS 1285 at *37–38, *quoting Leal v. State*, No. 14-13-00208-CV, 2014 Tex. App. LEXIS 12286 at *5 (Tex. App.—Houston [14th Dist.] Nov. 13, 2014, no pet.).

Appellant also notes that a fallacy in the implied consent statute (§ 724.011) is that the "implied consent" is based solely on a driver's decision to drive on a Texas highway. In *Florida v. Jimeno*, 500 U.S. 248, 252 (1991), the Supreme Court of the United States held that "[A] suspect may of course delimit as he chooses the scope of the search to which he consents." In other words, a **necessary element of consent is the ability to limit or revoke it**. The fact that a person implicitly consents to a blood draw merely because the person drives on a Texas highway effectively makes the implied consent irrevocable, which of course amounts to no consent at all. Consent must be freely given, but the person giving the consent must also be allowed to withdraw it or limit it. *Jimeno*, 500 U.S. at 252; *Mason v. Pulliam*, 557 F.2d 426, 429 (5th Cir. 1977) ("[S]ince [appellee's] action was unilateral and contained no agreement as to duration, it was implicitly limited by [appellee's] right to withdraw his consent and invoke his Fourth Amendment rights.").

**viii. Under the holdings in *McNeely*, *Villarreal*, and other Texas courts of appeal, the trial court erred when it denied Appellant's motion to suppress because: (1) the officer admitted he did not even try to obtain a warrant for Appellant's blood; (2) there were no exigent circumstances justifying the warrantless blood draw under Texas Transportation Code § 724.012; (3) Thomas had no probable cause to arrest Appellant; (4) and the trial court's decision is not correct on any theory of law applicable to the case.**

To suppress evidence on an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct. *Russell v. State*, 717 S.W.2d 7, 9 (Tex. Crim. App. 1986). A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant. *Bishop v. State*, 85 S.W.3d 819, 822 (Tex. Crim. App. 2002). Once the defendant makes this showing, the burden of proof shifts to the State, which must establish that the search or seizure was conducted pursuant to a warrant or was reasonable. *Id*.

In the case before this Court, blood was seized from Appellant. The blood was **not** seized pursuant to a warrant, but was instead seized under Texas Transportation Code § 724.011 or 724.012. As a result, Appellant established that the blood draw occurred without a warrant, so the burden of proof shifted to the State. This was conceded by the State at the motion to suppress. (RR2, 4). Appellant will now show that

the State cannot meet its burden of proof that the blood draw was reasonable under the Fourth Amendment.

First, in clear violation of *McNeely* and *Villarreal*, Thomas did not even try to obtain a search warrant in this case, and there were no exigent circumstances present. Thomas did not see Appellant driving, nor encounter him at the scene. (RR2, 60–61). Thomas determined that Appellant was intoxicated, and placed Appellant under arrest based solely on the odor of alcohol and the fact that Appellant had been in a motorcycle accident, (RR2, 54, 76–79). The exchange between the State's attorney and Thomas was as follows (RR2, 60–61):

> Q: This situation is different that your normal DWI arrest because there is no initial contact. The initial contact is when you smelled the alcohol and then read them [sic] that (the DIC-24), correct?
>
> A. Yes.

After Thomas arrested Appellant, Thomas immediately determined a warrantless blood-draw would be in order. (RR2, 76-78). Thomas never even contemplated getting a warrant for Appellant's blood. (RR2, 82). The exchange between the Defense attorney and Thomas was as follows (RR, 82):

> Q. When you're in the room and you're reading the DIC-24 . . . You never even contemplated that search warrant?

A. No sir.

Thomas thus did not obtain a warrant for the blood draw. (RR, 87). Rather, Thomas just went to his car and got the paperwork and test kit, read it to Appellant and ordered a legal blood draw be performed. (RR, 76−77, 79,84). As a result, it is clear that Thomas's sole basis for the blood draw was § 724.011 (via 721.014), an unconstitutional statute.

And contrary to the trial court's erroneous finding that "the facts presented in this case establish the existence of the exigent circumstances exception to the warrant requirement of the 4th Amendment" in that:

> Trooper Thomas could not have reasonably expected to have obtained a warrant without impeding the defendant's medical treatment. The defendant's medical condition was severe, and the treatment of his injuries required urgent, lifesaving care, and the impending transportation by helicopter to Dallas. Whether the defendant would survive the injuries sustained in the accident was unknown. These circumstances were not variables controlled by Trooper Thomas.

(CR, 354 ¶ 28). A review of the record, however, shows that **there were in fact no exigent circumstances**, and **Thomas acted unreasonably by not even attempting to obtain a search warrant**.

For the exigent circumstances exception to apply, there must be both probable cause and exigent circumstances present. *See Warden v. Hayden*, 387 U.S. 294, 298-299 (1967) *and Vale v. Louisiana*, 399 U.S. 30, 35-36 (1970).

Exigent circumstances are those in which officers reasonably fear for their safety, where firearms are present, where there is a risk of a criminal suspect's escaping, or fear of destruction of evidence. *See Gutierrez v. State*, 221 S.W.3d 680, 685 (Tex. Crim. App. 2007) and *Parker v. State*, 206 S.W.3d 593, 597 n.7 (Tex. Crim. App. 2006); *see also McNairy v. State*, 835 S.W.2d 101, 106 (Tex. Crim. App. 1991) (en banc) and *United States v. Rico*, 51 F.3d 495, 500 (5th Cir. 1995), *cert. denied*, 116 S. Ct. 220 (1995). If the State seeks to rely on the exigent circumstances exception, the State bears the burden of proving by a preponderance of the evidence the existence of both probable cause and exigent circumstances. *Gutierrez*, 221 S.W.3d at 685; *see also United States v. Morales*, 171 F.3d 978, 981-982 (5th Cir. 1999). In the case before this Court, there was neither probable cause nor exigent circumstances present to justify the blood draw without a warrant. Additionally, as the court held in *Douds*, "to ensure that the exigencies of the situation make dispensing with the constitutional requirement of a warrant 'imperative,' courts must focus on whether the State showed that police could not reasonably obtain a warrant, not on whether it showed how severe the accident was." *Douds*, 434 S.W.3d at 853–54.

Thus, the FFCL are not supported by the record. Appellant was arrested at roughly 11:27–11:32 p.m. and the blood was drawn from Appellant only five to ten later at 11:37 p.m. (RR, 79, 84). Though the court found that attempting to obtain a warrant would have impeded defendant's medical treatment, this is simply not the case. *See* FFCL (CR 354 at ¶28). Additionally, that is not the relevant question—as this Court pointed out in *Bowman* (the State must show that the time necessary to obtain a warrant under the circumstances threatened the destruction of the blood evidence, not that it **could possibly** have held up the treatment of Appellant). Also, this would not have been a situation where—as the State's attorney put it—the Appellant was "taken out of the jurisdiction. . . transported 60 miles away, and the evidence along with [him]." Trooper Thomas was an officer with Texas Department of Public Safety. As such, he had jurisdiction across the entire state of Texas. He could have gotten the warrant and forwarded it to another trooper in the area of the hospital to which Appellant was taken, or he could have driven there himself. Either way, the warrant could have been obtained and executed in a timely fashion. Instead, in clear reliance on implied consent, it simply wasn't sought.

It is also clear that Trooper Thomas created any time constraints that could reasonably be thought to exist. Though Trooper Walters was on scene just after Thomas arrived, Thomas neither allowed Walters to clear the scene so he could go to TMC to see Appellant, nor did he send Walters. Additionally, though the State and the trial court claim that the exigency is due to the pending care flight, Thomas knew Appellant would likely be care-flighted 45 minutes before arriving at the hospital, was clearly told that Appellant would be upon arrival at TMC, yet still waited 25 minutes before going into Appellant's room. Thomas created any time constraint that existed, and as the court explained in *Douds*, the courts historically frown upon findings of exigency in situations like this.

Next, Thomas had no probable cause to arrest Appellant. Thomas's sole reason for arresting Appellant for driving while intoxication was an odor of alcohol combined with a motorcycle accident. (RR2, 53–54, 79). There are three types of police-citizen interactions: (1) consensual encounters that do not implicate the Fourth Amendment; (2) investigative detentions that are Fourth Amendment seizures of limited scope and duration that must be supported by a reasonable suspicion of criminal activity; and (3) arrests, which are reasonable only if supported by probable cause. *Florida v. Bostick*, 501 U.S. 429, 434

(1991); *Terry v. Ohio*, 392 U.S. 1, 30-31 (1968); *Gerstein v. Pugh*, 420 U.S. 103, 111-112 (1975).

Appellant was arrested in this case. Although the smell of alcohol coming from Appellant's person and the fact that Appellant was involved in an accident may have justified further investigation, these circumstances did not justify an arrest. But, Thomas simply arrested Appellant and then proceeded to effect the warrantless blood-draw. As a result, there was never any probable cause established for Appellant's arrest.

Further, the trial court's decision is not correct on any theory of law applicable to the case. The trial court erred and abused its discretion because in violation of *McNeely*, the trial court ruled that a warrant was not necessary in Appellant's case for the blood draw. The only reason for the warrantless blood draw in this case was the natural metabolization of alcohol in Appellant's blood. This fact did not represent a *per se* exigency that justified an exception to the Fourth Amendment's warrant requirement for the nonconsensual blood draw.

Finally, the possible exception noted by the Supreme Court of the United States that "[E]xigent circumstances justifying a warrantless blood draw may arise in the regular course of law enforcement due to delays

from the warrant application process" does not apply in the case before this Court. This is because Trooper Thomas admitted that he could have obtained a warrant for the blood draw, but—relying on the implied consent statute, which he believed allowed the government to compel a blood sample from Appellant without a warrant—did not even take a single step to secure one. (RR2, 81). Thus, because the Trooper did not make an attempt to get a warrant, there could be no delay at all in the warrant application process.

Because the natural dissipation of alcohol in the bloodstream does not constitute an exigency sufficient to justify conducting a blood test without a warrant (*McNeely*, *id*. at 1563 and 1568), and there were no other recognized exceptions to the warrant requirement present in Appellant's case (i.e., consensual search, brief investigatory stop, search incident to a valid arrest, and the plain-view doctrine), the involuntary taking of Appellant's blood, which involved a "compelled physical intrusion beneath (Appellant's) skin and into his veins" to obtain a sample of his blood for use as evidence in a criminal investigation amounted to an invasion of "bodily integrity" that "implicates (Appellant's) most personal and deep-rooted expectations of privacy. *McNeely*, *id*. at 1558.

Based upon the totality of circumstances in this case, the warrantless, involuntary blood draw from Appellant was unreasonable and violated the Fourth Amendment. *McNeely*, *id*. at 1559. Because Thomas could have reasonably obtained a warrant before the blood draw was performed, the Fourth Amendment mandates that he should have done so. *Id*. at 1561. There were no delays in the warrant application process in this case. Instead, Thomas simply chose to not attempt to obtain a warrant for Appellant's blood.

Though it is clear through Thomas's testimony that Thomas's sole basis for not obtaining a warrant was implied consent. As is made clear in *Villarreal*, although Texas Transportation Code § 724.012 (b) allows Thomas to obtain a breath or blood sample, § 724.012 did **not** allow Thomas to obtain a breath or blood sample **without first obtaining a warrant**. *Id*. at *34; *See* Tex. Transp. Code § 724.012 (2012). Finally, this Court should conclude that given the absence of a warrant, the absence of exigent circumstances, and the absence of consent, the State clearly failed to demonstrate that the involuntary blood draw was reasonable under the Fourth Amendment or that an exception to the Fourth Amendment's warrant requirement is applicable in this case (as was the State's burden). *Villarreal*, *id*. at *34; U.S. Const. Amend. IV. *See also Weems*, 434

S.W.3d at 665 (the implied consent statute [Tex. Transp. Code § 724.011 (2012)] and the mandatory blood draw statute [Tex. Transp. Code § 724.012 (2012)] are not exceptions to the warrant requirement of the Fourth Amendment).

For the same reasons as in *Villarreal*, *Sutherland*, 436 S.W.3d at 29-31, and in *Weems*, no exigent circumstances existed in the case before this Court because Thomas made no effort to obtain a warrant. *See also Gentry,* 2014 Tex. App. LEXIS 9538, *Id.* at *9 (the implied consent and mandatory blood draw statutory schemes found in the Texas Transportation Code are not exceptions to the warrant requirement under the Fourth Amendment).

### ix. Even if Chapter 724.012(b) was constitutional, its requirements cannot be met.

In *McBride v. State*, 946 S.W.2d 100, 101 (Tex. App.—Texarkana 1997, pet. ref'd), the court held that there are three essential elements that must be met in order to require a specimen under §724.012(b):  (1) there must be an accident; (2) there must be a death or danger of death as a result of Appellant's actions; and (3) there must be a refusal of the request for the specimen.  If one of these elements cannot be found, then §724.012 is not applicable.  *Id.*

In the case at bar, Appellant did not refuse to provide a specimen. As a result, even if the mandatory draw provision was not unconstitutional, §724.012(b) clearly cannot apply to Appellant's case.

### x. The good-faith exception does not apply in this case.

The good-faith exception to the Fourth Amendment provides that if an officer relies in "good faith" on a statute authorizing his warrantless search and the statute is later determined to be unconstitutional, the federal exclusionary rule does not apply. *See Illinois v. Krull*, 480 U.S. 340, 342, 355 (1987). The federal good- faith exception is a federal judicially-created exception that runs counter to Texas law. *See* Tex. Code Crim. Proc. Art. 38.23(b) (2012).

Three good-faith exceptions exist under federal law: (1) where an officer relies in good faith on a statute authorizing a warrantless search, and the statute is later found to be unconstitutional; (2) the search was conducted in good- faith reliance upon binding appellate precedent which is later overturned; and (3) where the search was conducted in good-faith reliance upon a warrant which is later determined to be improperly issued. *See Davis v. United States*, 131 S.Ct. 2419, 2427-2428 (2011); *Krull*, 480 U.S. at 342; and *United States v. Leon*, 468 U.S. 897, 923-924 (1984).

Unlike the federal exclusionary rule, in Texas, the exclusionary rule is statutory. *See* Tex. Code Crim. Proc. Art. 38.23(b) (2012). The Texas exclusionary rule already has an exception for "a law enforcement officer acting in objective good faith reliance upon a **warrant** issued by a neutral magistrate based on probable cause." *Id*. Nowhere in the Texas exclusionary rule does it provide that an officer may rely in good faith when there was no warrant issued by a neutral magistrate based on probable cause. Further, the exceptions to the federal exclusionary rule apply to the Texas statutory exclusionary rule only if they are consistent with the plain language of the statute. *See Douds v. State*, 434 S.W.3d 842, 861 (Tex. App. Houston [14th Dist.] 2014, *pet. granted*) (en banc). The Court of Criminal Appeals has previously rejected an effort to broaden the Texas good- faith exception using the federal rule. *Douds*, 434 S.W.3d at 861-862, *citing Howard v. State*, 617 S.W.2d 191, 193 (Tex. Crim. App. 1979) (op. on rehearing) (The federal good-faith exception does not apply to the Texas statutory good-faith exception).

And since "the Texas good faith exception is more limited than the scope of its federal counterpart... an officer's good faith reliance on the law or existing precedent is not recognized as an exception to the Texas exclusionary rule." *See State v. Jackson*, 435 S.W.3d 819, 831 (Tex. App.

Eastland 2014, *pet. granted*). For instance, in *Wehrenberg v. State*, 416 S.W.3d 458, 473 (Tex. Crim. App. 2013), the Court of Criminal Appeals adopted the federal independent source exception to the exclusionary rule. But in *State v. Daugherty*, 931 S.W.2d 268, 270 (Tex. Crim. App. 1996), the Court of Criminal Appeals refused to adopt the federal inevitable-discovery exception to the exclusionary rule.

In the instant case, because no warrant was issued, the good- faith exception does not apply. *See Jackson*, 435 S.W.3d at 831 and *Douds*, 434 S.W.3d at 862. This conclusion is consistent with the holding in *Weems*, in which the Fourth Court of Appeals, in citing *Krull*, 480 U.S. at 342, confirmed that "[A] statute cannot support objectively reasonable reliance if, in passing the statute, the legislature wholly abandoned its responsibility to enact constitutional laws...Nor can a law enforcement officer be said to have acted in good-faith reliance upon a statute if its provisions are such that a reasonable officer should have known that the statute was unconstitutional." *Weems*, *id*. at 666. The Fourth Court of Appeals confirmed that other than where there is an actual warrant, there is no good-faith exception in the Texas exclusionary rule under Article 38.23. *Id*.;

Tex. Code Crim. Proc. Art. 38.23 (2012); *Douds*, 434 S.W.3d at 862 (Good-faith exceptions of *Davis* and *Krull* do not apply to the Texas exclusionary rule).

### xi. The holding in *McNeely* applies to this case because this case was pending when *McNeely* was handed down.

The holding in *McNeely* is applicable to Appellant's case. In *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987), the Supreme Court held that a newly- announced constitutional rule for conducting criminal prosecutions must be applied retroactively to all cases pending on direct review or not yet final when the rule was announced. By implication, a newly-announced constitutional rule applies to any case that is pending before a trial court when the rule is handed down. Only if a case becomes "final" (i.e., conviction becomes final because the direct appeal fails) would the holding in *Teague v. Lane*, 489 U.S. 288, 310 (1989) apply, where the Supreme Court held that new federal constitutional rules do not apply retroactively to those cases that became final before the new rule was created.

In the case before this Court, Appellant was charged by information on February 7, 2012, and this case is now on direct appeal. (CR, 16). *McNeely* was handed down on April 17, 2013. Thus, on April 17, 2013, the case before this Court was pending before the trial court, so the holding *McNeely* applies to this case.

### xii. Appellant was harmed by the trial court's error of denying the motion to suppress.

Under Texas Rule of Appellate Procedure 44.2(a), the admission of evidence obtained in violation of the Fourth Amendment is subject to a constitutional harm analysis. *See Hernandez v. State*, 60 S.W.3d 106, 106 (Tex. Crim. App. 2001); Tex. Rule App. Proc. 44.2(a) (2015). If the appellate record reveals constitutional error that is subject to harmless error review, a reviewing court must reverse the judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment. *See* Tex. Rule App. Proc. 44.2(a) (2015). The harmless error inquiry "should adhere strictly to the question of whether the error committed in a particular case contributed to the verdict obtained in that case." *Snowden v. State*, 353 S.W.3d 815, 821 (Tex. Crim. App. 2011). The trial court's admission of the blood test evidence and all the evidence after Appellant's arrest clearly contributed to Appellant's conviction. *See Holmes v. State*, 323 S.W.3d 163, 173-174 (Tex. Crim. App. 2010). Thus, Appellant was harmed by the trial court's error of denying the motion to suppress.

### xiii. Conclusion

Under the Fourth Amendment, the holdings in *McNeely*, *Villarreal*, and other Texas courts of appeal, the trial court erred when it denied Appellant's motion to suppress the blood test results because: (1) Thomas admitted he did not even try to obtain a warrant for Appellant's blood; (2) there were no exigent circumstances justifying the warrantless blood draw under Texas Transportation Code § 724.012; (3) Thomas had no probable cause to arrest Appellant; (4) the trial court's decision is not correct on any theory of law applicable to the case; (5) the good-faith exception does not apply in this case; (6) the holding in *McNeely* apply to this case because this case was pending when *McNeely* was handed down; and

(7) Appellant was harmed by the trial court's error of denying the motion to suppress. As a result, Appellant prays that this Court reverse the Judgment and sentence for Driving While Intoxicated, suppress all the evidence seized from Appellant, including the blood results and all evidence due to the illegal arrest, and remand this case back to the trial court for a new trial. *See* Tex. Code Crim. Proc. Art. 44.25 (2015) and Tex. Rule App. Proc. 43.2(d) (2015).

2. **Issue Two:** The trial court erred and Appellant was harmed when the trial court denied Appellant the right to present the totality of the legal evidence raising an issue of material fact, which was an element of the offense, and, which—in turn—allowed the State to admit evidence, obtained in violation of the Constitutions and laws of the United States of America and the State of Texas, against Appellant at trial.

### i. Statement of Facts

The State made an oral motion in limine seeking to prevent the defense from any mention of the issue of exigent circumstances or implied consent during voir dire or trial. (RR6, 5). Appellant argued that this prevented him from presenting a defense and from putting before the jury facts relevant to a 38.23 determination by the jury. (RR6, 5–16). The trial court granted this motion. (RR6, 9–16). During trial, counsel for the State sought to introduce evidence of Appellant being unconscious, the DIC-24 being read, and such being proper under the protocol of DPS. (RR6, 95–97). Counsel for Appellant objected and a discussion was had at the bench that the State was violating the order on the Motion in Limine. (RR6, 96). This discussion was later put on the record. (RR6, 118–120). Appellant's objections were overruled. Appellant called Thomas and made an offer of proof as to the evidence sought to be put before the jury. (RR6, 120–125). Appellant then made argument before the court that the denial of the right to present the testimony given in the offer of proof violated Appellant's right to

present a defense, and denied Appellant due process of law under the federal and state constitutions. (RR6, 126–128). The State then cross-examined Thomas and the following exchange was had:

Q. You also testified that there was not sufficient time for you to go through the process to get a blood warrant?

A. If I – if I had wanted to cite the search warrant issue, I wouldn't have had time. **I wasn't even—the search warrant didn't even come into play because I had implied consent available to me through the way of the statute.**

(RR6, 128–129, *see also* RR6, 130 at lines 10-20, RR6, 131). The State argued that the admission of the evidence was "not an element of the offense," would be "overly confusing to the jury," was a "waste of time," and was not relevant." Further, the State argued that the **"only determination** [the jury was] going to make at the end of their case [was if] the State [had] proven that the defendant was intoxicated." (RR6, 132). Attorney for Appellant argued that Art. 38.23 provided for the jury to make a decision as to the legality of the search and ultimate seizure of Appellant's blood. (RR6, 135, 140, 141-142). Though the court acknowledged that Art. 38.23 encompassed both probable cause and the constitutionality of the seizure, the court denied Appellant the right to go into the matters (testified to in the offer of proof) in front of the jury. The court acknowledged that a 38.23 instruction would be given. (RR6, 148). Yet, the court denied

Appellant the right to do present said evidence to the jury, and denied Appellant's objection to that ruling. (RR6, 138, 142).

### ii. Introduction

As is shown in Issue 1, the blood evidence was obtained illegally—both under implied consent and under the mandatory blood draw provision. Because the court denied Appellant's motion to suppress, the results of the unconstitutional blood draw were presented to the jury. Then the trial court denied Appellant's request during trial to present **material** evidence regarding the circumstances of the blood draw, despite the fact that the evidence was (1) probative of the issue at hand; (2) not likely to impress the jury in an irrational, but indelible way; (3) not going to take an unreasonable amount of time to develop; and (4) was necessary for Appellant's defense.

### iii. Standard of Review is Abuse of Discretion

An appellate court reviews a trial court's ruling on the admission of evidence for an abuse of discretion. *See Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). A trial court abuses its discretion when its decision is so clearly wrong as to lie outside that zone within which reasonable persons might disagree. *Webb v. State*, 36 S.W.3d 164, 176 (Tex. App.--Houston [14th Dist.] 2000, pet. ref'd).

**iv. Applicable Law**

In weighing the probative value of offered evidence under Rule 403, a trial court considers (1) the evidence's inherent probative value; (2) its potential to impress the jury in some irrational but indelible way; (3) the amount of time the proponent needs to develop the evidence; and (4) the proponent's need for the evidence. *Peters v. State,* 93 S.W.3d 347, 351 (Tex. App. Houston 14th Dist. 2002, no pet.) (*citing Wheeler v. State*, 67 S.W.3d 879, 888 (Tex. Crim. App. 2002); *Montgomery v. State*, 810 S.W.2d 372, 389-90 (Tex. Crim. App. 1990) (opinion on reh'g)).

**v. The trial court abused their discretion in not allowing material evidence—which was both relevant and probative to be introduced to the jury.**

How the evidence was obtained in this case was a material fact—which went directly to an element of the offense—namely the per se intoxication of persons with a blood alcohol content of .08 or higher. Denying admission of the facts related to the blood draw, namely the facts regarding implied consent and exigent circumstances denied Appellant the opportunity to present a defense, and the opportunity to squarely put in front of the jury the issues to be decided in the Art. 38.23 instruction. First, this evidence had inherent probative value, not only to the Art. 38.23 motion, but to the issue of per se intoxication, which was used to convict Appellant. Second, this evidence would not have impressed the jury in an irrational, but

indelible way—and certainly would not have confused the jury as argued by the State. As this Court is aware, prosecutors have long used both implied consent and mandatory blood draw terminology in their presentation of the case to convict. Third, very little time was needed to present this information, and this same amount of time was used—outside of the presence of the jury—to make an offer of proof. And finally, as stated above, this evidence was material, going directly to the heart of one of the elements of the offense. Defendant's need for it was striking.

### vi. Conclusion

Under the Fourteenth Amendment of the United States Constitution, and under Art I, § 10, of the Texas Constitution, Appellant was denied the right to present a defense and denied due process of law when The trial court erred and Appellant was harmed when the trial court denied Appellant the right to present the totality of the legal evidence raising an issue of material fact, which was an element of the offense, and, which—in turn—allowed the State to admit evidence, obtained in violation of the Constitutions and laws of the United States of America and the State of Texas, against Appellant at trial. As a result, Appellant prays that this Court reverse the Judgment and Sentence for Driving While Intoxicated, and remand this case back to the trial court for a new trial. *See* Tex. Code

Crim. Proc. Art 44.25 (2015) and Tex. R. App. Proc. 43(d) (2015).

## IX.     Conclusion and Prayer

For the above reasons, Appellant prays that upon appellate review, this Court of Appeals reverse the *Judgment of Conviction and Sentence* (Jury Trial) entered and imposed by the trial court in cause number 2012-1-0206, suppress all evidence seized in this case, including the blood evidence, and remand the case back to the trial court for further proceedings consistent with the opinion of this Court.

Respectfully submitted,

/s/   John Hunter Smith
John Hunter Smith
SBN: 24028393

Wynne & Smith
707 W. Washington
Sherman, Texas 75092
Tel. (903)-893-8177
Fax (903)-892-0916

Kristin R. Brown
SBN: 24081458

Law Office Of Kristin R. Brown, PLLC
18208 Preston Road, Suite D9375
Dallas, Texas 75252
Tel. (214)-446-3909
Fax (214)-481-4868

*Attorneys For Appellant*

## X. Certificate of Service

This is to certify that a copy of this brief has been emailed to Ms. Karla Baugh-Hackett, Grayson County District Attorney's Office, 200 S. Crockett, Sherman, Texas 75090 on the 4th day of May, 2015, by email to baughk@co.grayson.tx.us.

_____
John Hunter Smith
Kristin R. Brown

**XI. Certificate of Compliance with Tex. Rule App. Proc. 9.4**

Under Texas Rule of Appellate Procedure 9.4, this certifies that this document complies with the type volume limitations because it is computer generated and does not exceed 15,000 words. Using the word-count feature of Microsoft Word, the undersigned certifies that this document contains 13,877 words in the entire document *except* in the following sections: caption, identity of parties and counsel, statement regarding oral argument, table of contents, index of authorities, statement of the case, statement of issues presented, statement of jurisdiction, statement of procedural history, signature, proof of service, certification, certificate of compliance, and appendix. This document also complies with the typeface requirements because it has been prepared in a proportionally-spaced typeface using Microsoft Word in 14-point font.

/s/ Kristin R. Brown

_____

Kristin R. Brown
John Hunter Smith